BERTSCH, Appellee and Cross–Appellant,

v.

COMMUNICATIONS WORKERS OF AMERICA, LOCAL
4302, et al., Appellants and Cross–Appellees.

[Cite as *Bertsch v. Communications Workers of Am.,
Local 4302* (1995), 101 Ohio App.3d 186.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 16728.

Decided Feb. 15, 1995.

*Mark Hilkert,* for appellee and cross-appellant.

*Patrick F. Roche* and *Joyce Goldstein,* for appellants and cross-appellees.

QUILLIN, Judge.

The Communications Workers of America, Local 4302 ("the union"), appeals a jury verdict for the plaintiff, Loretta A. Bertsch, on her claims of defamation and invasion of privacy. Bertsch also received punitive damages and attorney fees. Because the trial court incorrectly determined that the statements were not made in the context of a labor dispute and that the standard of "actual malice" did not apply to Bertsch's defamation claim, we reverse that part of the judgment. Because the union did not make any statements that could amount to an invasion of privacy, we reverse that aspect of the judgment as well.

Bertsch is an employee of the city of Akron. She works at the Akron Corrections Facility ("ACF"), and one of her primary responsibilities is to do the payroll for the ACF employees. Bertsch's position is considered management, and she is not a member of the union. The union represents the guards at the ACF.

From time to time and for various reasons, there were errors in the payroll. It was the city's policy that the errors would not be corrected until the following pay period. When the union and the city negotiated a new contract in the summer of 1991, the union wanted the contract to include a provision in which the city promised to correct payroll errors in a more timely fashion. After negotiation, the city agreed to correct payroll errors within seven days of receiving notice.

Shortly after an agreement was reached and the negotiations were concluded, the city named Bertsch its employee of the month. In light of the recent payroll controversy, the union felt that the award was presented to Bertsch as an insult to the union. The union responded in its monthly newsletter, "News and Griefs," by awarding the city its "Cracked Bell" award for naming Bertsch as its employee of the month. The article commented that "[Bertsch] cannot hold a candle to any single one of the members of this Local" and attempted to support that claim with the following:

"1. She has problems adding, so the detention officers now total their own time cards. Prior to this, the detention officers had to start showing the number of hours they worked in a day as Loretta had trouble figuring them out from the time clock they punch in and out at. Could this be trouble telling time?

"2. Due to her frequent errors in payment of our members, we had to include special contract language to handle payroll errors in a timely fashion.

"3. Her extreme sensitivity and paranoia regarding the size of her hind end directly resulted in the suspension of one of the detention officers."

The article's reference in paragraph three to Bertsch's "extreme sensitivity and paranoia regarding the size of her hind end" stems from an incident involving a guard at the ACF. Apparently the guard had yelled "fat ass alert" as Bertsch entered the room. Bertsch felt that the comments were directed at her and reported the incident to a supervisor. The guard claimed to have been referring to another guard and not to Bertsch. After a hearing on the matter, the guard was suspended for one day without pay.

Bertsch learned of the article in the union newsletter from her sister, a union member. The article upset Bertsch and exacerbated her high blood pressure condition. She brought claims against the union for defamation and invasion of privacy. A jury awarded Bertsch $37,500 for defamation and $37,500 for invasion of privacy. The jury also found that the union had acted with common-law malice

and awarded punitive damages. The trial judge fixed $19,461.25 as punitive damages and awarded $18,038.75 as attorney fees. The total judgment against the union was $112,500. The union appeals and Bertsch cross-appeals.

### The Union's Assignment of Error I

"The trial court erred in failing to find as a matter of law that the editorial was published in the context of a labor dispute and therefore erred in (1) denying the union's motion for summary judgment; (2) denying the union's motions for directed verdict; and (3) failing to instruct the jury that the editorial was issued in the context of a labor dispute and that, therefore, actual malice was required for both defamation and invasion of privacy."

Generally, in a defamation action, the plaintiff has the burden of proving by clear and convincing evidence that the defendant made a false, defamatory statement of fact regarding the plaintiff and that the defendant was at least negligent in publishing it. *Lansdowne v. Beacon Journal Pub. Co.* (1987), 32 Ohio St.3d 176, 178–180, 512 N.E.2d 979, 982–984. The United States Supreme Court has held that, in some circumstances, the First Amendment requires that the plaintiff show greater fault on the part of the defendant: the plaintiff must show that the defamatory statement was "made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 279–280, 84 S.Ct. 710, 725, 11 L.Ed.2d 686, 706. The actual malice standard applies when the plaintiff is a public official or a public figure. *Id.* It also applies when a private figure plaintiff is seeking presumed damages or punitive damages (rather than actual damages) and the defamatory remark involves a matter of public concern. *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 349–350, 94 S.Ct. 2997, 3011–3012, 41 L.Ed.2d 789, 810–811.

In *Linn v. United Plant Guard Workers of Am.* (1966), 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582, the court held that the actual malice standard applied to defamation claims arising from labor disputes subject to the jurisdiction of the National Labor Relations Board ("NLRB"). The Ohio Supreme Court discussed the extension of the *Sullivan* standard to labor disputes in *Dale v. Ohio Civ. Serv. Emp. Assn.* (1991), 57 Ohio St.3d 112, 114–115, 567 N.E.2d 253, 255–256:

"The court did so, not out of constitutional necessity, but as a means of accommodating the sometimes competing policies of the National Labor Relations Act ('NLRA') and state defamation law. * * * A major objective of the NLRA is to encourage free and vigorous discussion of labor-management issues. * * * State defamation law is intended to redress injuries to personal reputation. * * * In order to balance these interests, and to prevent the use of threatened defamation suits as economic weapons, the court held that the plaintiff in such a

suit must show that the defamatory statement was published with actual malice and caused the plaintiff actual damage." (Citations omitted.)

■ It is therefore necessary to determine whether the union made the defamatory statements in the context of a labor dispute. That determination is a question of law to be decided by the court based on the record as a whole. *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666. The Ohio Supreme Court has used the definition of "labor dispute" found in Section 152(9), Title 29, U.S. Code:

"The term 'labor dispute' includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee." *Id.*, 6 Ohio St.3d at 371, 6 OBR at 423, 453 N.E.2d at 668.

In *Dale*, the court found that the term "labor dispute" should not be limited to those disputes subject to the jurisdiction of the NLRB and expanded the definition:

"[A] 'labor dispute' is any controversy over the terms and conditions of employment or the representation of employees for collective bargaining purposes, regardless of whether the disputants stand in the relation of employer and employee, and regardless of whether the dispute is subject to the jurisdiction of the National Labor Relations Board, the State Employment Relations Board, or some other administrative agency." *Dale*, 57 Ohio St.3d at 116, 567 N.E.2d at 257.

■ Here, payroll errors had been an ongoing source of tension between members of the union and management; delay correcting payroll errors had even become an issue in the negotiation of the new contract between the city and the union. Bertsch, as the city employee responsible for the payroll, was at the heart of that matter. Although the statements here may not have been well tailored toward advancing any union interest, we conclude that they were made in the broad context of a labor dispute. Therefore, the *Sullivan* standard should have been applied to Bertsch's defamation claim.

■ Applying the actual malice standard to the defamation claim, we are required to conduct an independent review of the sufficiency of the evidence. *Dale*, 57 Ohio St.3d at 117, 567 N.E.2d at 258, citing *Old Dominion Branch No. 496 v. Austin* (1974), 418 U.S. 264, 282, 94 S.Ct. 2770, 2780, 41 L.Ed.2d 745, 760, and *Sullivan*, 376 U.S. at 284–286, 84 S.Ct. at 728–729, 11 L.Ed.2d at 709. As the Ohio Supreme Court explained in *Perez v. Scripps–Howard Broadcasting Co.* (1988), 35 Ohio St.3d 215, 218, 520 N.E.2d 198, 201–202, a reckless disregard for

the falsity of a statement means that "(1) the false statements were made with a high degree of awareness of their probable falsity, * * * or (2) the defendant entertained serious doubts as to the truth of the publication * * *." (Citations omitted.)

As plaintiff, Bertsch had the obligation of demonstrating that the union published the statements with actual malice. Although Bertsch alleged malice in her complaint, a review of the record reveals that Bertsch presented no evidence of actual malice. Indeed, the record indicates the contrary: over a period of years, the union and union members made numerous complaints regarding the calculation of the payroll. Although each mistake may not have been attributable to the performance of Bertsch, it was not reckless for the union to maintain the belief that the mistakes were Bertsch's, as payroll was exclusively her responsibility. Bertsch has not shown that the union knew that the statements were false or that the union entertained serious doubts about the veracity of the statements and failed to make reasonable efforts to determine their truthfulness. Accordingly, the trial court's judgment for Bertsch on her defamation claim is reversed and final judgment is entered in favor of the union.

The union also contends that the actual malice standard should have applied to the invasion of privacy claim as well. This might be true if Bertsch's claim was for an invasion of privacy based on "false light." See *Time, Inc. v. Hill* (1967), 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456; *Cantrell v. Forest City Publishing Co.* (1974), 419 U.S. 245, 95 S.Ct. 465, 42 L.Ed.2d 419. Ohio, however, does not recognize the false light tort of invasion of privacy. *M.J. DiCorpo, Inc. v. Sweeney* (1994), 69 Ohio St.3d 497, 507, 634 N.E.2d 203, 210.

In Ohio, the tort of invasion of privacy consists of any of the following: "the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Housh v. Peth* (1956), 165 Ohio St. 35, 59 O.O. 60, 133 N.E.2d 340, paragraph two of the syllabus. In the case at bar, the invasion of privacy must have been based on the intrusion into and the public revelation of Bertsch's private affairs. Because the statements that are the basis of an action for the publicizing of one's private affairs are deemed to be true, it is illogical to discuss the defendant's degree of fault in determining their truthfulness. The standard of actual malice, therefore, is inapplicable to Bertsch's claim for invasion of privacy.

## The Union's Assignment of Error II

"The trial court erred in denying the union's motions for summary judgment and directed verdict by finding as a matter of law that the editorial was not an opinion only, and was not therefore protected speech."

■ Although we are not convinced that all of the union's statements are properly characterized as opinion, we agree that they will not support an action for invasion of privacy. As noted above, Bertsch's claim must have been based on the publicizing of her private affairs with which the public had no legitimate concern. An examination of the article, however, reveals that none of the union's statements amount to a publicizing of Bertsch's private affairs.

Most of the article consists of comments regarding Bertsch's job performance. The union also commented on an incident involving Bertsch and a guard in which the union represented the guard at his disciplinary hearing. Although these are not matters of general public concern, they are matters of legitimate concern to the members of the union and the statements were made to union members in the broad context of a labor dispute. As such, they will not support an action for invasion of privacy.

The article also mentions Bertsch's "extreme sensitivity and paranoia regarding the size of her hind end." This statement cannot support an invasion of privacy claim because it cannot reasonably be construed as an assertion of fact— it is merely insult or hyperbole. As the Ohio Supreme Court has noted: "The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to the occasional acts that are definitely inconsiderate and unkind." *Yeager*, 6 Ohio St.3d at 375, 6 OBR at 426, 453 N.E.2d at 671.

Although the union's statements cannot support an action for invasion of privacy, whether the statements could support an action for the intentional infliction of emotional distress as outlined in *Yeager* is not before us. Bertsch had initially brought such a claim against the union, but later withdrew it.

The union's other assignments of error and Bertsch's cross-assignment of error are rendered moot by the disposition of the first two assignments of error and need not be discussed. App.R. 12(A)(1)(c).

The judgment of the trial court is reversed and final judgment is entered in favor of the union.

*Judgment reversed.*

REECE, P.J., and DICKINSON, J., concur.