**Connie GOSCHE, Plaintiff,**

**v.**

**CALVERT HIGH SCHOOL,
et al., Defendants.**

**No. 3:97 CV 7001.**

United States District Court,
N.D. Ohio,
Western Division.

Jan. 15, 1998.

Howard V. Mishler, Law Offices of Howard V. Mishler, Westlake, OH, for Plaintiff.

Gregory T. Lodge, Shumaker, Loop & Kendrick, Toledo, OH, for Defendants.

## MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on Defendants' motion for summary judgment. For the following reasons, Defendants' motion will be granted in its entirety.

## I. BACKGROUND

From 1984 until 1995, Plaintiff Connie Gosche worked as a music teacher in a number of Catholic schools in Tiffin, Ohio, on a year-to-year basis. In June of 1994, Gosche signed an annual teaching contract with St. Mary's School, a Catholic elementary school affiliated with St. Mary's Parish, and subject to the Diocese of Toledo. As part of her teaching contract, Gosche was required to affirm that:

I. I believe that the work of the Catholic Church, its agencies and institutions has characteristics that make it different from the work of other agencies and institutions.

II. I believe that with others I share the common purpose of working diligently to maintain and strengthen the Catholic Church and its members. *By word and example I will reflect the values of the Catholic Church.*

My work embraces a four-fold purpose:
— to build and live Christian community
— to integrate learning with faith
— to instill a sense of mission, care for others, and service
— to draw the school community into worship.

(Emphasis added.)

In September, 1994, Gosche and her husband divorced. By December, 1994, Gosche had become sexually involved with a married man, Urban Schalk, who was the father of three children enrolled in Tiffin Catholic schools. In early 1995, Gosche was placed on medical leave for depression she was suffering as a result of her divorce.

During the first three months of 1995, the pastor of St. Mary's Parish, Francis A. Murd, received a number of complaints about the Gosche–Schalk affair from the parents or grandparents of children enrolled in Tiffin Catholic schools. In February, 1995, Fr. Murd also learned that Schalk had left his wife of fifteen years after becoming involved with Gosche.

In March, 1995, Fr. Murd confronted Gosche about the allegations he had heard. Gosche denied that her relationship with Schalk was sexual.[1] Based on the numerous reports he had heard from other individuals, however, Fr. Murd concluded that Gosche was sexually involved with Schalk. He determined that Gosche was subject to dismissal for violation of her obligation to reflect the values of the Catholic Church by word and example. Gosche's teaching contract was not renewed for 1995–96.

Plaintiff then filed the instant action in this Court against St. Mary's School, Calvert High School,[2] the Catholic Diocese of Toledo, and three school employees, claiming that Defendants had wrongfully discriminated against her when they placed her on medical leave (for depression) and then failed to renew her teaching contract. In Counts I, VI, and IX of her complaint, she claims that Defendants discriminated against her on the basis of her sex and disability, in violation of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a *et seq.*, the Americans with Disabilities Act, 42 U.S.C. § 12112(a), and analogous Ohio state law, Ohio Rev.Code ch. 4112. In Count II, she brings a claim for invasion of privacy. In Count III, she raises a claim of promissory estoppel in connection with Defendants' failure to renew her contract. In Count IV, she brings a claim for breach of contract. In Count V, she brings what appears to be a claim for intentional infliction of emotional distress, although it is not styled as such. In Count VIII,[3] she brings a claim for intentional interference with an employment contract against two of the individual defendants.

Defendants have moved for summary judgment on all claims. They argue that their failure to renew Gosche's teaching contract was proper under federal and state law. Plaintiff has filed opposition to Defendants' motion, Defendants have replied, and Plain-

---

**1.** Gosche admitted at her deposition that this statement was not true, and that she was, in fact, involved in an extramarital affair with Schalk.

**2.** Calvert High School has been dismissed as a party defendant.

**3.** There is no Count VII in the complaint.

tiff has filed a surreply. The Court discusses the parties' contentions below.

## II. DISCUSSION

### A. Summary Judgment Standard

As an initial matter, the Court sets forth the relative burdens of the parties once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (*quoting* Fed.R.Civ.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### B. Counts I, V, and IX: Sex and Disability Discrimination

In Counts I, VI, and IX of her complaint, Plaintiff claims that Defendants discriminated against her on the basis of her sex and disability, by (1) unfairly disciplining her, (2) forcing her to take a medical leave of absence due to depression she suffered after her divorce, and (3) failing to renew her teaching contract. The employee carries the initial burden of establishing a prima facie case of discrimination in employment, whether that discrimination be based on sex or disability. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). An employee establishes a prima facie case of discrimination by presenting evidence which, when viewed in the light most favorable to her, would permit a reasonable jury to find that she was discharged or otherwise discriminated against because of her sex or disability. *See Rose v. National Cash Register Corp.,* 703 F.2d 225, 227 (6th Cir.1983).

She can meet this burden by presenting either direct or circumstantial evidence of discrimination. Direct evidence is found, for instance, where an employer's policy is discriminatory on its face, *see Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), or where a corporate decisionmaker expressly states a desire to remove employees in the protected group, *see LaPointe v. United Autoworkers Local* 600, 8 F.3d 376, 379–80 (6th Cir.1993). In direct evidence cases, once a plaintiff shows that the prohibited classification played a motivating part in the employment decision, the burden of both production and persuasion shifts to the employer to prove that it would have terminated the employee even had it not been motivated by impermissible discrimination. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 244–45, 109 S.Ct. 1775, 1787–88, 104 L.Ed.2d 268 (1989) (plurality opinion); *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1081 (6th Cir.1994).

Where no direct evidence of discrimination exists, an employee can establish her prima facie case by indirect or circumstantial evidence. In that instance, she must show (1)

that she is a member of the protected class; (2) that she was subjected to adverse employment action; (3) that she was meeting her employer's reasonable expectations; and (4) that she was replaced by an individual outside the protected class. *Siegel v. Alpha Wire Corp.*, 894 F.2d 50, 53 (3rd Cir.1990); *Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 313 (6th Cir.1989). Where the plaintiff presents only circumstantial evidence of discrimination, the burden of production then "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse action. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Once the employer has met its burden, the burden shifts back to the employee to show that the employer's stated reason for the adverse action is pretextual. *Id.* at 804, 93 S.Ct. at 1825. In circumstantial evidence cases, the burden of persuasion remains at all times with the employee. *Gagne*, 881 F.2d at 315–16.

It is also unlawful under Ohio law "[f]or any employer, because of the ... sex, national origin ... [or] age ... of any person ... to discharge without just cause ... or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio Rev.Code § 4112.02(A). The Ohio Supreme Court has held that the coverage of § 4112.02(A) is identical to the coverage of federal law prohibiting discrimination in the employment context. Thus, evidence sufficient to support a finding of discrimination under Title VII of the Civil Rights Act of 1964 is necessary before a violation of § 4112.02(A) can be shown. *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St.2d 192, 196, 421 N.E.2d 128, 131 (1981); *see also Little Forest Medical Ctr. of Akron v. Ohio Civil Rights Comm'n*, 61 Ohio St.3d 607, 609–10, 575 N.E.2d 1164, 1167 (1991), *cert. denied*, 503 U.S. 906 112 S.Ct. 1263, 117 L.Ed.2d 491 (1992); *El Grande Steak House v. Ohio Civil Rights Comm'n*, 99 Ohio App.3d 557, 562, 651 N.E.2d 440, 444 (1994); *Twins-*

*burg City Schools v. Ohio Civil Rights Comm'n*, 86 Ohio App.3d 527, 529, 621 N.E.2d 591, 593 (1993).

Plaintiff Gosche has not presented any direct evidence of discrimination in this case. She has shown no official employment policy disfavoring women or individuals with disabilities. She has not presented the Court with any overtly discriminatory statements attributable to her former employer. Therefore, she must establish her case by indirect or circumstantial evidence. The parties do not dispute that Plaintiff meets the first prong of the circumstantial evidence test on her sex discrimination claim: she is female. They do dispute whether Plaintiff has shown that she is disabled.[4] The parties do not dispute that Plaintiff meets the second prong of the test in that she has been subjected to the adverse employment action of termination. No evidence has been presented as to whether Plaintiff was replaced by someone not in the protected class.

It is on the third prong of the test that Plaintiff's claim fails absolutely: there is no dispute that Plaintiff was not meeting her employer's expectations at the time of her discharge. One of Plaintiff's employer's expectations, to which Plaintiff agreed in writing, was that Plaintiff would "by word and example ... reflect the values of the Catholic Church."

Plaintiff does not dispute that adultery and directly contributing to the dissolution of another's marriage do not reflect the values of the Catholic Church. She argues that Fr. Murd's decision not to renew her contract was nonetheless wrongful, because (1) Fr. Murd based his decision on "hearsay," and (2) Plaintiff's extramarital affair is not relevant to her qualifications as a schoolteacher.

■ Plaintiff's first contention is meritless. Fr. Murd is a priest, not a judge, and his employment decisions are not subject to the Federal Rules of Evidence. Fr. Murd's decision did not have to be based on evidence that would be admissible in a court of law. For that matter, *the decision did not have to*

---

**4.** It is unnecessary for the Court to address the issue of whether Plaintiff was an "otherwise qualified individual with a disability," *see* 42

U.S.C. § 12102(2)(A), since she cannot meet the third prong of the test, *see infra*.

*be correct. All that the law requires is that the decision be nondiscriminatory.* Furthermore, Plaintiff herself has admitted that Fr. Murd's conclusion that she was sexually involved with Schalk was factually correct.

■ Plaintiff's second contention is likewise meritless. Whatever Plaintiff's own *post-hoc* claims may be regarding the relevance of her sexual conduct to her employment at a Catholic school, it is clear that the Diocese and Parish considered her sexual conduct to be relevant to her employment. This Court does not sit to redefine job qualifications, and must defer to the employer's determination of what is relevant to the job, particularly where, as here, federal law expressly permits religious corporations to discriminate on the basis of religion "with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation ... of its activities." 42 U.S.C. § 2000e–1; *see also Boyd v. Harding Academy of Memphis, Inc.,* 88 F.3d 410 (6th Cir.1996) (religious school's termination of teacher for violating policy against extramarital sex does not violate Title VII).

Since Plaintiff was not meeting her employer's legitimate expectations at the time she was disciplined and her contract was not renewed, she cannot bring a claim that such discipline and termination was discriminatory. Defendants' motion for summary judgment must be granted on Counts I, V, and IX.

· *C. Count II: Invasion of Privacy*

■ In Count II of her complaint, Plaintiff claims that Fr. Murd invaded her privacy by questioning her about the allegations that she was having an affair with Schalk. Ohio courts recognize the tort of invasion of privacy to encompass four distinct types of wrongful acts: (1) intrusion into the plaintiff's seclusion, solitude, or private affairs; (2) public disclosure of private facts about the plaintiff with which the public has no legitimate concern; (3) publicity that places the plaintiff in a false light; and (4) appropriation of the plaintiff's name or likeness for the defendant's advantage. *Piro v. Franklin Twp.,* 102 Ohio App.3d 130, 144, 656 N.E.2d 1035, 1044 (1995); *Killilea v. Sears, Roebuck & Co.,* 27 Ohio App.3d 163, 166, 499 N.E.2d 1291, 1294 (1985).[5]

■ Plaintiff brings her claim under the first branch of the tort: intrusion into the plaintiff's seclusion, solitude, or private affairs. In order to prevail on that claim, a plaintiff must show that the defendant wrongly intruded into her private activities "in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *Housh v. Peth,* 165 Ohio St. 35, 133 N.E.2d 340 (1956). Thus, Plaintiff can prevail only if the intrusive act is one which is offensive or objectionable to the reasonable man. It is also necessary that the thing intruded upon or pried into is, and must be entitled to be, private.

■ Plaintiff can meet neither prong of that test. It is undisputed that Fr. Murd approached Plaintiff only after he had heard from numerous other sources that Plaintiff was having an affair with Schalk, and that he asked her only to confirm or deny the rumors. It is also beyond dispute that Fr. Murd had a right to know if Plaintiff was involved in an extramarital affair, in light of Plaintiff's contractual agreement "by word and example ... [to] reflect the values of the Catholic Church." Plaintiff has not suggested any way, other than by directly asking Plaintiff herself, in which Fr. Murd could have investigated the rumors about her. Defendants' motion for summary judgment must be granted on Count II.

---

**5.** Whether a plaintiff can bring a cause of action for "false light" publicity in Ohio is a matter of some uncertainty. In *M.J. DiCorpo, Inc. v. Sweeney,* 69 Ohio St.3d 497, 634 N.E.2d 203 (1994), the Ohio Supreme Court expressly declined either to adopt or reject such a cause of action. Appellate Courts in Ohio are split on the issue. Compare *Piro* and *Killilea* (recognizing the cause of action) with *Bertsch v. Communications Workers of Am. Local 4302,* 101 Ohio App.3d 186, 655 N.E.2d 243 (1995) and *Rogers v. Buckel,* 83 Ohio App.3d 653, 615 N.E.2d 669 (1992) (not recognizing the cause of action). Since Plaintiff's invasion of privacy claim does not involve allegations of false light publicity, the Court need not decide this issue.

### D. Counts III & IV: Promissory Estoppel and Breach of Contract

■ In Count III of her complaint, Plaintiff raises a claim of promissory estoppel in connection with Defendants' failure to renew her contract. In Count IV, she brings a claim for breach of contract. Defendants deny that Plaintiff had any enforceable expectation in continued employment at St. Mary's. They also argue that they had cause to terminate Plaintiff's employment at any rate.

It is unnecessary for this Court to determine whether there is a triable issue of fact as to whether Plaintiff had an expectation in continued employment at St. Mary's, because Plaintiff forfeited any expectation she might otherwise have had when she violated the terms of her contract by engaging in an extramarital affair with Schalk. Such conduct would have justified St. Mary's in terminating Plaintiff's contract immediately, without waiting for the end of the contract year; it certainly justified St. Mary's in refusing to renew Plaintiff's contract. Defendants' motion for summary judgment must be granted on Counts III and IV.

### E. Count V: Intentional Infliction of Emotional Distress

■ In Count V of her complaint, Plaintiff brings a claim for intentional infliction of emotional distress. A plaintiff alleges facts sufficient to support a finding of intentional or reckless infliction of emotional distress by alleging that the defendant has engaged in conduct which has been:

> so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down,

and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt.

*Yeager v. Local Union 20,* 6 Ohio St.3d 369, 375, 453 N.E.2d 666, 671 (1983) (quoting Restatement (Second) of Torts § 46 cmt. d (1965); *see also Russ v. TRW, Inc.,* 59 Ohio St.3d 42, 48, 570 N.E.2d 1076, 1083 (1991)).

[9] In this case, Plaintiff alleges that she was unfairly disciplined, that Defendants failed to renew her teaching contract, and that the school wrongfully instituted a no-smoking policy. In light of Plaintiff's violation of her employment contract, no reasonable jury could find that any of those acts was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Defendants' motion for summary judgment must be granted on Count V.

### F. Count VIII: Intentional Interference with Employment Contract

■ In Count VIII of her complaint, Plaintiff brings a claim for intentional interference with an employment contract against two of the individual defendants. The Court agrees with Defendants that summary judgment must be granted in Defendants' favor on this count, although for slightly different reasons than those posited by Defendants.

Ohio recognizes a cause of action for tortious interference with employment, but that cause of action exists only against outsiders to the employment setting. A defendant is absolutely immune from damages for tortious interference with an employment contract where the act complained of is within the scope of the defendant's duties. *Anderson v. Minter,* 32 Ohio St.2d 207, 214, 291 N.E.2d 457, 461 (1972). Since the acts of which Plaintiff complains all occurred within the scope of the individual defendants' duties, they cannot be forced to submit to the bur-

den of a trial to justify their actions. Defendants' motion for summary judgment must be granted on Count VIII.

### III. CONCLUSION

For the foregoing reasons, Defendants have shown that they are entitled to judgment as a matter of law on each of Plaintiff's complaints. Defendants' motion for summary judgment is granted.

IT IS SO ORDERED.