OPINION
Plaintiff-appellant, Gary Denlinger, appeals the February 22, 2000 entry of the Franklin County Court of Common Pleas dismissing appellant's claims brought against defendants-appellees, the Columbus Public Schools, its Board of Education, and several employees, pursuant to Civ.R. 12(B)(6). Appellees have moved to dismiss appellant's appeal. For the following reasons, we deny appellees' motion to dismiss and affirm in part and reverse in part the judgment below.
On July 17, 1998, appellant filed this lawsuit against numerous defendants, including the Columbus Public Schools, the Columbus School Board, and various school officials and employees ("appellees" herein), Franklin County Children Services ("FCCS") and various employees of FCCS (collectively the FCCS defendants), the Dispatch Printing Company, and Christina Cunningham.
In his lengthy and detailed complaint, appellant made the following material allegations relevant here: (1) that appellant was employed as a principal at one of the elementary schools in the Columbus public school system; (2) that, on February 2, 1997, defendant Christina Cunningham, whose daughter attended appellant's school, made false allegations to appellant's supervisor and FCCS that appellant had sexually molested Cunningham's daughter and another female student; (3) that, based upon Cunningham's allegations, appellant was immediately removed from his position as principal at the school pending an investigation; (4) that the school administration and FCCS conducted biased and incomplete investigations into the allegations of misconduct by ignoring and concealing evidence tending to exonerate appellant; (5) that believing he would not receive fair consideration and treatment by the school administration, appellant, with the advice of counsel, entered into a separation agreement (the "Separation Agreement"), which he signed on September 30, 1997, and the Board of Education approved on November 4, 1997; (6) that, at the meeting at which the board of education approved the Separation Agreement, a reporter for the defendant Dispatch Printing Company inquired with the school district's human resources director as to the reason for the Separation Agreement and was told by the human resources director that appellant had been accused of sexual misconduct with children and that the school believed it to be true; (7) that, on November 5, 1997, an article in The Columbus Dispatch stated that appellant had been removed from his job for breaking criminal laws; and (8) that, on November 5, 1997, school administrators released information to reporters with WBNS-TV, Channel 10, that accused appellant of child sexual abuse including information received by the school district from FCCS through its investigation, which information was published to the community at large on November 7, 1997.
In total, appellant alleged fifteen claims against the various defendants. As against appellees, appellant alleged eight separate claims: (1) that appellees breached the Separation Agreement by revealing the sexual misconduct allegations against appellant ("First Claim"); (2) that appellees defamed appellant in the November 4, 1997 statements to The Columbus Dispatch reporter ("Second Claim"); (3) that appellees defamed appellant by releasing information to WBNS-TV, Channel 10 on November 5, 1997 ("Third Claim"); (4) that appellees invaded appellant's right to privacy in their statements to The Columbus Dispatch and WBNS-TV ("Fourth Claim"); (5) that appellees violated public policy by disclosing confidential information to The Columbus Dispatch and WBNS-TV, in violation of R.C. 2151.421, 149.43(A)(2), and other statutes and administrative regulations ("Fifth Claim"); (6) that appellees fraudulently induced appellant into entering into the Separation Agreement by promising to keep the allegations of sexual abuse confidential when appellees never intended to keep the allegations confidential ("Sixth Claim"); (7) that appellees recklessly or intentionally inflicted severe emotional distress on appellant ("Seventh Claim"); and (8) that appellees violated appellant's substantive due process rights of good reputation as guaranteed by Section 16, Article I, Ohio Constitution ("Eighth Claim"). Appellant attached a copy of the Separation Agreement to his complaint.
On August 18, 1998, appellees filed a multi-prong motion to dismiss all claims against them pursuant to Civ.R. 12(B)(6). In their motion, appellees argued: (1) that the waiver and release provisions of the Separation Agreement precluded appellant's claims; (2) that the Separation Agreement contained no promise of confidentiality and, even if it did, such a promise was unenforceable as a matter of law; (3) that appellees' communications with The Columbus Dispatch and WBNS-TV were privileged under Ohio defamation law; (4) that the fraudulent inducement claim was barred by the statute of frauds; (5) that the complaint failed to allege the type of conduct required to support a substantive due process claim; (6) that appellant's complaint failed to allege the required elements or conduct sufficient to support an intentional infliction of emotional distress claim; and (7) that appellant had no public policy tort as a matter of law. On September 1, 1998, appellant filed his memorandum contra appellees' motion to dismiss and, on September 15, 1998, appellees filed their reply memorandum.
On September 24, 1998, while appellees' motion to dismiss was still pending, appellant voluntarily dismissed with prejudice his intentional infliction of emotional distress claims as to all defendants, including appellees. In addition, on December 7, 1998, appellant voluntarily dismissed with prejudice all claims against the FCCS defendants.
By decision rendered on February 10, 2000, the trial court granted appellees' motion to dismiss. In so doing, the trial court held that appellant's breach of contract claim failed, as a matter of law, because the clear and unambiguous language of the fully-integrated Separation Agreement did not obligate appellees to keep the allegations about appellant confidential. The trial court further held that appellant's fraudulent inducement claim failed, as a matter of law, because appellant did not allege that he tendered back the consideration he received to enter into the agreement. Finally, the trial court held that the waiver and release provision of the Separation Agreement precluded appellant from bringing any of the remaining tort and constitutional claims alleged in the complaint, including the defamation claims arising out of the communications with the media.
A journal entry granting appellees' motion to dismiss was filed on February 22, 2000. In this entry, the trial court specifically determined that the causes of action alleged against appellees (and thereby dismissed) were clearly separable from those still pending against the remaining defendant, The Dispatch Printing Company, and further specifically found that, pursuant to Civ.R. 54(B), there was no just reason for delay with regard to the termination of the action against appellees.
On March 17, 2000, at 4:45 p.m., appellant filed a Notice of Dismissal Without Prejudice, which stated that appellant "hereby dismisses this matter without prejudice as to all claims, pursuant to Civil Rule 41(A)(1)." Two minutes later, appellant filed a notice of his appeal from the trial court's February 22, 2000 journal entry granting appellees' motion to dismiss.
On April 19, 2000, appellees filed with this court a motion to dismiss appellant's appeal. Relying on the Ohio Supreme Court's recent decision in Denham v. New Carlisle (1999), 86 Ohio St.3d 594, appellees contend that appellant's Civ.R. 41(A)(1) notice of dismissal without prejudice of "all claims" had the effect of rendering the entire action as though it had never been brought. Thus, appellees claim, since there was no action pending by the time appellant filed his notice of appeal, there was nothing to appeal to this court. We disagree.
In Denham, supra, the Ohio Supreme Court resolved a conflict among the court of appeals as to whether a party may, pursuant to Civ.R. 41(A)(1), voluntarily dismiss without prejudice some claims in a suit but not dismiss the entire action. In Denham, the plaintiff had sued the city of Carlisle and various other individual defendants for the death of her husband. Id. at 594. The trial court granted summary judgment for the city on the basis of statutory immunity, specifically stating in its order that its decision was not a final appealable order pursuant to Civ.R. 54(B). Id. Thereafter, plaintiff filed a Civ.R. 41(A)(1) notice dismissing her claims against the remaining defendants and timely filed a notice of appeal from the trial court's summary judgment order. The court of appeals dismissed the appeal, finding that the plaintiff could not make the interlocutory summary judgment decision immediately appealable by dismissing the remaining parties to the action.
The Ohio Supreme Court reversed, holding that a Civ.R. 41(A)(1) notice of dismissal dismisses only those claims against those defendants designated in the notice and does not apply to claims and/or defendants not designated in the notice of dismissal. Id. at 597. Thus, reasoned the court, the trial court's decision granting summary judgment for one of the several defendants survived the plaintiff's Civ.R. 41(A)(1) notice of dismissal limited to the remaining defendants and thereby became a final appealable order under R.C. 2505.02 and Civ.R. 54(B). Id.
Here, the language of appellant's notice of dismissal did not distinguish between any of the defendants in the case but simply stated that appellant dismissed "this matter without prejudice as to all
claims, pursuant to Civil Rule 41(A)(1)." Plaintiff's claims against appellees were, therefore, included in appellant's Civ.R. 41(A) notice of dismissal. Thus, under Denham (if Denham governed the appealable status of this case), we would arguably have no authority to hear appellant's appeal of the trial court's prior dismissal of appellees from the case.
Denham, however, does not govern this case because, unlike Denham, the trial court's prior entry dismissing appellant's claims against the appellees was already a final appealable order when appellant filed his Civ.R. 41(A)(1) notice of dismissal. In its February 22, 2000 entry, the trial court specifically found that there was no just reason for delay with regard to the dismissal of the claims against appellees and, as such, the dismissal entry became a final appealable order pursuant to Civ.R. 54(B). Thus, even though appellant's March 17, 2000 voluntary dismissal purported to dismiss the entire action and all claims, the notice had no effect on those claims already subject to final judgment. See Ruiz v. Caraballo (1997), 117 Ohio App.3d 388, 392-393 (noting that plaintiff's Civ.R. 41[A][1] dismissal included all claims including those subject to an interlocutory summary judgment ruling which remained non-final and non-appealable because the trial court did not include Civ.R. 54[B] "no just reason for delay" language).
For the foregoing reasons, we find, as a matter of law, that appellant's Civ.R. 41(A)(1) voluntary dismissal did not include appellant's claims against appellees as such claims were already subject to a final appealable order. Appellant's appeal is properly before this court, and appellees' motion to dismiss is, therefore, denied.
Appellant raises the following four assignments of error:
 1) The trial court erred in granting judgment to appellees because the issue could not be decided upon a motion under Civ.R. 12(B)(6). Appellant had no burden of proof on the issue of release as to any tort claim. Pleading release is an affirmative defense.
 2) The trial court erred in concluding that the language of the release clearly and unequivocally evidenced the intent of Mr. Denlinger to release the appellees from the consequences of future unknown intentional torts, including defamations and intentional violation of law.
 3) The trial court erred in not holding that the release, as it relates to intentional torts, is void because it violates public policy.
 4) The trial court erred in not holding that there exists a common law public policy based tort for redress for the appellees' publication of false information contained in confidential government investigatory files in violation of the statutes and regulations specifically intended to prevent such dissemination.
As indicated by these assignments of error, and as admitted by appellant in his brief, appellant does not seek review of the trial court's disposition of appellant's contract-related claims, i.e., appellant's first claim for breach of contract and his Sixth Claim for fraudulent inducement. Rather, the appeal involves only the trial court's dismissal of appellant's "independent tort claims" (i.e., his Second and Third Claims for defamation, his Fourth Claim for invasion of privacy, his Fifth Claim alleging a public policy tort, and his Eighth Claim alleging a violation of substantive due process), which were all dismissed on the grounds that such claims were barred by the release and waiver provision of the Separation Agreement.
In his first assignment of error, appellant contends that the trial court erred in dismissing appellant's independent tort claims based upon the release and waiver provisions of the Separation Agreement because release and waiver are affirmative defenses, which must be specifically pleaded by appellees. See Civ.R. 8(C). According to appellant, a trial court may not grant a Civ.R. 12(B)(6) motion, which tests the sufficiency of a plaintiff's pleadings, on the basis of an affirmative defense.
Dismissal of a claim pursuant to Civ.R. 12(B)(6) is appropriate only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Yorkv. Ohio State Highway Patrol (1991), 60 Ohio St.3d 143, 144. A court must presume all factual allegations contained in the complaint to be true and make all reasonable inferences in favor of the non-moving party. Mitchell v. Lawson Milk Co. (1988), 40 Ohio St.3d 190, 192. In resolving a Civ.R. 12(B)(6) motion, a court is confined to the allegations contained in the complaint and, as an appellate court, we must independently review the complaint to determine if dismissal was appropriate. McGlone v. Grimshaw (1993), 86 Ohio App.3d 279, 285.
In general, affirmative defenses, because they usually require reference to materials found outside the face of the complaint, may not be raised by means of a Civ.R. 12(B)(6) motion to dismiss. However, an affirmative defense may be the basis of a motion to dismiss where it is apparent from the face of the complaint that the defense is available.Spence v. Liberty Twp. Trustees (1996), 109 Ohio App.3d 357, 362;Morrison v. Gugle (Oct. 13, 1998), Franklin App. No. 98AP-251, unreported; see, also, Epperly v. Medina City Bd. of Edn. (1989),64 Ohio App.3d 74, 76 (same rule applicable to motions for judgment on the pleadings under Civ.R. 12[C]).
Here, the trial court granted appellees' motion to dismiss based upon the language of the Separation Agreement attached to appellant's complaint. "A copy of any written instrument attached to a pleading is a part thereof for all purposes." Civ.R. 10(C). Thus, to the extent the language of the Separation Agreement clearly forecloses appellant's claims against appellees, the trial court could properly dismiss those claims under Civ.R. 12(B)(6). See Allstate Ins. Co. v. Blaum (Dec. 2, 1988), Ross App. No. 1490, unreported ("[i]f a written instrument is attached to the complaint, it should be construed together with the averments of the complaint in determining whether there is any possible set of facts which would entitle the plaintiff to relief"); cf. State exrel. Crabtree v. Franklin Cty. Bd. of Health (1997), 77 Ohio St.3d 247,249 (relator's complaint was properly dismissed based upon reference to material attached to the complaint).
In sum, the trial court did not err in dismissing appellant's claims against appellees simply because the ground on which it did so constitutes an affirmative defense. Appellant's first assignment of error is not well-taken.
In his second assignment of error, appellant contends that the trial court erred in holding that appellant's independent tort claims fell within the language of the release and waiver provision of the Separation Agreement. In particular, appellant contends that the language of the Separation Agreement does not clearly and unambiguously show that appellant intended to release appellees of liability for the future tortious conduct alleged in the complaint.
A release of a cause of action for damages is ordinarily an absolute bar to a later action on any claim encompassed within the release.Haller v. Borror Corp. (1990), 50 Ohio St.3d 10, 13. A release is a contract and, as such, the overriding consideration in interpreting a release is to ascertain the intent of the parties, which intent is presumed to reside in the language the parties chose to employ in the agreement. See, generally, Whitt v. Hutchison (1975), 43 Ohio St.2d 53;Fabrizio v. Hendricks (1995), 100 Ohio App.3d 352. A court will not resort to extrinsic evidence in its effort to give effect to the parties' intentions unless the language in a contract is unclear or ambiguous, or where the circumstances surrounding the agreement invest the language of the contract with a special meaning. Kelly v. Medical Life Ins. Co.
(1987), 31 Ohio St.3d 130, 132. Further, absent fraud or mutual mistake, broadly-worded releases are generally construed to include all prior conduct between the parties, even if the scope of such conduct or its damage is unknown to the releasor. See, e.g., Task v. National CityBank (Feb. 10, 1994), Cuyahoga App. No. 65617, unreported (given broad language of the release, it was incumbent upon releasor to ascertain, at that time, whether he had any causes of action against defendant and, if so, to expressly manifest his intent to exclude those claims from the scope of the release); see, generally, Whitt, supra.
Releases from liability for future tortious conduct, however, are generally not favored by the law and will be narrowly construed.Glaspell v. Ohio Edison Co. (1987), 29 Ohio St.3d 44, 46-47;Swartzentruber v. Wee-K Corp. (1997), 117 Ohio App.3d 420, 424; see, also, Thompson v. Otterbein College (Feb. 6, 1996), Franklin App. No. 95APE08-1009, unreported. Nonetheless, courts, including this court, routinely apply such releases to bar future tort liability as long as the intent of the parties, with regard to exactly what kind of liability and what persons and/or entities are being released, is stated in clear and unambiguous terms. See, e.g., Swartzentruber, supra, at 424-427 (language releasing livery stable from "any and all claims" that arose out of "any and all personal injuries" was sufficiently clear and specific to bar injured horseback rider's negligence claims); Conkey v. Eldridge (Dec. 2, 1999), Franklin App. No. 98AP-1628, unreported (language in rental agreement releasing owner from "all liability for personal injuries, property damage, loss from theft, vandalism, fire, water, explosion, rodent damage, or any other causes" was sufficiently specific and clear to bar renter's claim arising out of theft of race car stored on owner's property); Jacob v. Grant Life Choices Fitness Center (June 4, 1996), Franklin App. No. 95APE12-1633, unreported (language in membership agreement releasing fitness center from liability for any injury or damage including damages resulting from negligence of fitness center barred member's negligence claims against fitness center).
Likewise, where the language of the release is ambiguous or too general, courts have held that the intent of the parties is a factual matter for the jury. See, e.g., Bowman v. Davis (1976), 48 Ohio St.2d 41,44-45 (medical consent form purporting to absolve physician and hospital "from responsibility for any untoward or unfavorable results" from surgery was ineffective because it failed to mention release from liability for negligence and failed to explain unfavorable results);Holmes v. Health Tennis Corp. of Am. (1995), 103 Ohio App.3d 364
(health club membership contract stating that member used facilities at his "own risk" and that club would not be liable for any injury or damage resulting from use of the facilities failed to express a clear and unambiguous intent of member to release health club from its negligence); Tanker v. N. Crest Equestrian Ctr. (1993), 86 Ohio App.3d 522
(language that horseback rider assumed "full responsibility and liability" for any and all personal injury associated with the riding of any horse at equestrian center was so general as to be meaningless); see, also, Isroff v. Westhall Co. (Feb. 21, 1990), Summit App. No. 14184, unreported ("[i]t is a well-recognized rule that a release that is so general that it includes within its terms claims of which the releasor was ignorant, and thus not within the contemplation of the parties when the release was executed, will not bar recovery of such claims").
The release and waiver provision at issue in this case is contained in paragraph 9 of the Separation Agreement, which states as follows:
 Except for any claims which may arise in the future with respect to the violation or alleged violation of this Agreement, Denlinger, on behalf of himself, his personal representatives, next of kin, heirs, successors, and assigns, release the Columbus City School Board of Education, its members, its officers, and its employees from any and all claims which he currently has or which arise in the future against any or all of such persons, based on his employment by and with the Board of Education, his reassignment in February, 1997, and/or his resignation from employment, whether now known or unknown to him, and whether already accrued or which may accrue in the future. Denlinger, on behalf of himself, his personal representatives, his heirs, next of kin, successors and assigns, waives any and all claims against the Columbus City School District Board of Education, its members, its officers, and its employees, arising from or in connection with his employment by and with the Board of Education, including his resignation from employment with the Board of Education and his reassignment in February, 1997, whether now known or unknown to him, and whether any such claims now are accrued or accrue in the future.
According to appellant, none of the independent tort claims alleged in the complaint (i.e., the claims for defamation, invasion of privacy, public policy tort, and substantive due process) are claims based on his employment, his reassignment or resignation — the three types of claims specifically enumerated in the release provision of the Separation Agreement. Appellant contends, therefore, that the language of the Separation Agreement does not conclusively include appellant's tort claims. We disagree.
Even if appellant were correct that his independent tort claims at issue here are not "based on" appellant's employment, reassignment or resignation in the sense that such claims do not necessarily require or derive their source from an employee/employer relationship between the parties, appellant's argument ignores the broader language contained in the waiver clause. As quoted above, appellant also waived all claims "arising from or in connection with" his employment and resignation. Given the factual basis for appellant's claims, it is unquestionable that his claims "arise from and/or are connected with" his employment and/or resignation from employment. As such, we find that the language of the release and waiver provision contained in the Separation Agreement clearly and unambiguously includes the alleged claims at issue in this case. Appellant's second assignment of error is not well-taken.
In his third assignment of error, appellant contends that, even assuming that his independent tort claims fall within the terms of the release and waiver provision of the Separation Agreement, the trial court erred in failing to find that the release, as applied to the claims alleged in the complaint, is void as against public policy. In particular, appellant contends that Ohio law precludes a party from avoiding future liability on the basis of a release when liability is premised upon intentional, reckless, willful or wanton misconduct, as appellant alleges in his complaint. We agree.
Ohio law is clear — a release is invalid as to future willful and wanton misconduct, and a party may not rely on a release to bar a claim based upon such conduct. Richard A. Berjian, D.O., Inc. v. Ohio BellTel. Co. (1978), 54 Ohio St.2d 147, paragraph two of the syllabus; see, also, Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367, 375;Bowen v. Kil-Kare, Inc. (1992), 63 Ohio St.3d 84, 90; see, e.g.,Swartzentruber, supra, at 424 (holding that it was clear error for the trial court to enter summary judgment for defendant on plaintiff's claim alleging willful, wanton, and malicious conduct because an otherwise valid and enforceable release cannot relieve a party from liability for such conduct).
Here, appellant alleged willful and wanton misconduct by appellees in each of his five independent tort claims. See complaint at paragraph 85 (appellees were "reckless, willful and wanton" in their ignorance of the truth or falsity of statements made to The Columbus Dispatch); paragraph 95 (appellees were "reckless, willful and wanton" in their ignorance of the truth or falsity of statements made to WBNS-TV); paragraph 103 (appellees' invasion of appellant's privacy was "malicious, reckless, willful or wanton"); paragraph 109 (appellees "maliciously, recklessly, willfully or wantonly" disclosed information in violation of public policy); and paragraphs 115 and 117 (allegations enumerated in complaint and realleged by incorporation violated substantive due process). Given these allegations in the complaint, the trial court erred in holding that the release and waiver provisions of the Separation Agreement barred all of appellant's claims as a matter of law. Appellant's third assignment of error is well-taken.
In his fourth assignment of error, appellant contends that the trial court erred in failing to specifically find that appellant may maintain a public policy tort claim (appellant's Fifth Claim) based upon appellees' alleged disclosures of confidential information obtained from FCCS. According to appellant, he has stated a viable claim against appellees under Greeley v. Miami Valley Maintenance Contrs., Inc. (1990),49 Ohio St.3d 228, and its progeny because the alleged disclosures violated Ohio public policy as set forth in R.C.2151.421(H), 5153.17, Ohio Adm. Code 5101:2-34-38, and R.C. 149.43(A)(2).[1]
As noted above, the trial court never addressed this issue in its decision below, having dismissed appellant's claims under the release and waiver provision of the Separation Agreement. Our disposition of appellant's third assignment of error, however, revives appellant's public policy tort claim, at least to the extent it alleges willful or wanton misconduct. As such, the issue of whether appellant has set forth a viable public policy tort claim is ripe for adjudication. Thus, in the interest of judicial economy and in light of appellees' contention (both below and on appeal) that appellant cannot maintain such a claim, we address the issue here.
In Greeley, supra, the Ohio Supreme Court recognized an exception to the employment-at-will doctrine when an at-will employee is discharged or disciplined for a reason that contravenes clear public policy. See, generally, Kulch v. Structural Fibers, Inc. (1997), 78 Ohio St.3d 134,148-162. In order to bring a cause of action pursuant to Greeley, however, a plaintiff must have been an at-will employee. Haynes v.Zoological Soc. of Cincinnati (1995), 73 Ohio St.3d 254, syllabus. Here, appellant was not an at-will employee. As such, appellant may not maintain a Greeley cause of action. See Haynes, supra, at 257;Stephenson v. Yellow Freight Systems, Inc. (Oct. 26, 1999), Franklin App. No. 99AP-77, unreported (plaintiff employed pursuant to a collective bargaining agreement could not bring an action pursuant to Greeley).
Appellant's fourth assignment of error is not well-taken. Moreover, given our finding that appellant may not maintain his public policy tort claim, pursuant to Greeley, the trial court's dismissal of that claim is affirmed, albeit on other grounds.
Similarly, appellees argue that there are other independent reasons to affirm the trial court's decision to dismiss appellant's remaining tort claims. In particular, appellees make three arguments initially raised below in their motion to dismiss. First, appellees contend that the alleged defamatory statements forming the basis of appellant's two defamation claims were protected by a qualified privilege as a matter of law. Second, appellees contend that appellant's allegations do not state a claim for invasion of privacy as a matter of law. Finally, appellees contend that appellant's allegations fail to raise a viable claim for a substantive due process violation. We address each in turn.
First, we reject appellees' contention that the alleged defamatory statements were protected by a qualified privilege as a matter of law. As recently noted by the Ohio Supreme Court, the defense of qualified privilege is deeply rooted in public policy and applies where society's interest in compensating a person for loss of reputation is outweighed by a competing interest that demands protection. A B-Abell Elevator Co.v. Columbus/Cent. Ohio Bldg. Constr. Trades Council (1995),73 Ohio St.3d 1, 8. In order to establish a qualified privilege, however, it must be shown that the defendant communicated in good faith. Id. Thus, a claim of qualified privilege can be defeated by a clear and convincing showing that the communication was made with actual malice, i.e., with knowledge that the statement was false or with reckless disregard as to its truth or falsity.Jacobs v. Frank (1991), 60 Ohio St.3d 111, paragraph two of the syllabus.
Here, as noted above, appellant alleges that appellees made their defamatory statements with knowledge or their falsity, or with reckless disregard as to their truth or falsity. Appellant's complaint, therefore, does not establish the existence of a qualified privilege as a matter of law and, as such, appellees are not entitled to a dismissal of appellant's defamation claims on this ground pursuant to Civ.R. 12(B)(6). See Bell v. Horton (1995), 107 Ohio App.3d 824, 829-830 (allegations of malice in plaintiff's complaint precluded affirmative defense of qualified privilege under motion to dismiss under Civ.R. 12[B][6]).
Second, we disagree with appellees' contention that appellant's allegations do not state a claim for invasion of privacy as a matter of law. To recover for invasion of privacy for publication of private facts (that which is alleged here), the following elements must be shown: (1) that there has been a public disclosure; (2) that the disclosure was of facts concerning the private life of an individual; (3) that the matter disclosed would be highly offensive and objectionable to a reasonable person of ordinary sensibilities; (4) that the disclosure was intentional; and (5) that the matter publicized is not of legitimate concern to the public. Killilea v. Sears, Roebuck Co. (1985),27 Ohio App.3d 163, 166-167; Early v. The ToledoBlade (1998), 130 Ohio App.3d 302, 342. According to appellees, school administrators have a duty to keep the public informed about what is purportedly occurring within the public school system and, as such, appellees had a duty to inform the media, after being questioned, about appellant's situation.
While appellees may be correct that disclosing on-the-job misconduct of one of its principals may generally be considered a matter of legitimate public concern, cf. Early, supra, at 345 (disclosure by newspaper of domestic violence by police officers contained in internal affairs files was of legitimate public interest); Bertsch v. Communications Workers ofAm., Local 4302 (1995), 101 Ohio App.3d 186, 193 (comments regarding plaintiff's job performance were of legitimate concern to members of the union to whom the statements were made in the context of a labor dispute and, as such, would not support an action of invasion of privacy) this general rule does not preclude appellant's invasion of privacy claim in this case.
Appellant's invasion of privacy claim is based upon appellees' alleged disclosure of information obtained from FCCS, which information is confidential and otherwise precluded from disclosure under R.C.2151.421(H), 5153.17, and Ohio Adm. Code 5101:2-34-38. Thus, despite the public's otherwise legitimate interest in the alleged on-the-job misconduct of school principals, appellees had no obligation to disclose the specific information alleged to have been disclosed here and, in fact, were required by law to keep it confidential. See, generally,State ex rel. Renfro v. Cuyahoga Cty. Dept. of Human Serv. (1990),54 Ohio St.3d 25, 27 (holding that child abuse investigation reports complied under R.C. 2151.421 are exempted from public records act and noting that such information is confidential as to the general public); cf., also, Levias v. United Airlines (1985), 27 Ohio App.3d 222, 225
(evidence that defendant wrongfully disclosed confidential medical information could support jury finding of invasion of privacy). As a result, we reject appellees' argument attacking appellant's invasion of privacy claim.
Finally, we agree with appellees' contention that appellant's allegations fail to raise a viable claim for a substantive due process violation. In this claim, appellant alleges that his right to a good reputation is specifically guaranteed under Section 16, Article I, Ohio Constitution. (Complaint at paragraph 116.) Further, appellant alleges that, in the absence of a good reputation, his right to obtain and keep employment in his chosen profession has been severely impaired, and that the actions of appellees deprived appellant of the substantive right to a good reputation and the right to employment directly arising therefrom. (Complaint at paragraphs 117 and 118.)
The relevant provision of Section 16, Article I, Ohio Constitution, states as follows: "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." This right-to-a-remedy provision of Section 16, Article I, Ohio Constitution, however, applies only to existing, vested rights, and "it is state law which determines what injuries are recognized and what remedies are available." Sedar v. Knowlton Constr.Co. (1990), 49 Ohio St.3d 193, 202, overruled on other grounds byBrennaman v. R.M.I. Co. (1994), 70 Ohio St.3d 460. "The purpose of the provision is thus to protect citizens in enforcing previously recognized rights; it is not to be used to help fashion novel causes of action."Wagner v. Vosler, D.O. (Aug. 10, 1992), Preble App. No. CA91-11-020, unreported. As such, appellant has no independent substantive due process claim for the protection of his reputation under Section 16, Article I, Ohio Constitution, separate from his common law defamation claims already addressed herein. We, therefore, affirm the trial court's dismissal of appellant's Eighth Claim.
For the foregoing reasons, appellees' motion to dismiss is denied, and appellant's first, second, and fourth assignments of error are overruled. Appellant's third assignment of error is sustained to the extent that the trial court's dismissal of appellant's two defamation claims and his invasion of privacy claims, alleging willful and wanton misconduct, is reversed. The trial court's dismissal of appellant's remaining claims is affirmed. The judgment of the trial court is affirmed in part and reversed in part and this matter is remanded for further proceedings consistent herewith.
Motion to dismiss denied.
 ____________________ LAZARUS, J.
BOWMAN, P.J., and BROWN, J., concur.
[1] R.C. 2151.421(H) generally provides that reports of child abuse made to a child services agency are confidential and generally prohibits the unauthorized dissemination of the contents of such reports. R.C.5153.17 generally provides that written records of investigations kept by county children services boards or county departments of human services are confidential. Ohio Adm. Code 5101:2-34-38 provides rules for the maintenance of the confidentiality and the limited dissemination of reports and investigations of child abuse. R.C. 149.43(A)(2) generally exempts "confidential law enforcement investigatory records" from the public records act disclosure requirements.