[No. B045262. Second Dist., Div. Two. June 5, 1990.]

RODNEY PHILLIP DOWELL, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

**COUNSEL**

John K. Van de Kamp, Attorney General, Henry G. Ullerich and Thomas Scheerer, Deputy Attorneys General, for Defendant and Appellant.

Norman Goldman for Plaintiff and Respondent.

**OPINION**

**GATES, J.**—The Department of Motor Vehicles (Department) appeals from the judgment commanding it to set aside its decision suspending Rodney Phillip Dowell's driver's license based upon his failure to establish financial responsibility as a driver in an automobile accident which caused substantial property damage. (Veh. Code, § 16070.) It contends that regardless of Dowell's good faith belief that the automobile in which he was driving was insured, if he, in fact, was not "financially capable," as defined by section 16021 of the Vehicle Code,[1] his license was properly suspended.

---

[1] All subsequent statutory references are to the Vehicle Code.

The Department having elected to make this a test case, the underlying facts are not in dispute. Dowell, an uninsured driver, while operating an uninsured vehicle, was involved in a traffic accident in March 1988, which resulted in damage of $500 or more. The Department notified him of its intent to suspend his driver's license, and he sought administrative review.

At his administrative hearing, Dowell averred he would not have taken possession of the vehicle if he had known it was uninsured. Therefore, he claimed, before he did so he had asked for, and had been shown, an insurance card and a current policy of insurance. In truth, however, the policy was not in effect at the time of the accident.

The hearing officer stated, "Well Department will stipulate to that in order to save time and testimony we're not going to argue the fact that he thought the vehicle was insured . . . there's no reason to challenge what he's indicating here."

When subsequently notified the Department had found the suspension proper, Dowell filed his petition for writ of mandate. The court granted it and this appeal followed.

In reviewing an administrative decision to suspend a driver's license, the trial court is authorized to exercise its independent judgment on the evidence. (*Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392 [188 Cal.Rptr. 891, 657 P.2d 383].) Where the facts are not in dispute, however, their effect is a question of law, and the findings and conclusions of the trial court are not controlling on appeal. (*Ruttenberg* v. *Department of Motor Vehicles* (1987) 194 Cal.App.3d 1277, 1282 [240 Cal.Rptr. 249].)

It is the primary purpose of the Financial Responsibility Act, and the express policy of this state, that "those owning or operating motor vehicles on the streets or highways of this state shall be financially capable of providing monetary protection to those suffering injury to their person or property . . . and further, that such capability shall be deemed *a concurrent responsibility of such motor vehicle ownership or operation*." (Stats. 1974, ch. 1409, § 1, italics added.)

To that end our Legislature has mandated that "[e]*very driver* and every owner of a motor vehicle *shall at all times maintain in force one of the forms of financial responsibility specified in Section 16021* . . . ." (§ 16020, subd. (a), italics added.)[2] "*Whenever a driver* involved in an accident described in

---

[2] Section 16021 provides in relevant part, "Financial responsibility of the driver or owner is established if the driver or owner of the vehicle involved in an accident described in Section 16000 is: [¶] (a) A self-insurer under the provisions of this division. [¶] (b) An insured or

Section 16000 *fails to prove the existence of financial responsibility* as required by Section 16020 at the time of the accident, *the department shall pursuant to subdivision (b) suspend the privilege of the driver or owner to drive a motor vehicle . . . .*" (§ 16070, subd. (a), italics added.) Subdivision (b) of that section provides:

"Whenever the department receives an accident report pursuant to this article which alleges that *any of the drivers involved in the accident* was not in compliance with Section 16020 at the time of the accident, the department *shall* immediately mail to that driver a notice of intent to suspend the driver's license of that driver. The department *shall* suspend the driver's license 15 days after mailing the notice, *unless the driver has, prior to that date, established proof of financial responsibility at the time of the accident, as specified in Section 16021, with the department.* The suspension notice shall notify the driver of the action taken and the right to a hearing under Section 16075." (Italics added.)

"The intent of the Legislature in passing the [financial reponsibility] act is unambiguous. The operation of the statute is simple. Furthermore, the operation of the law is without regard to fault. Thus, where such a driver is unable to prove one of the specified forms of financial responsibility, the law mandates that the DMV *shall* suspend the driver's license. (§ 16070.)" (*Ruttenberg* v. *Department of Motor Vehicles, supra*, 194 Cal.App.3d at p. 1284, italics in original.)

■ In sum, when a driver, knowing that he himself is unable to meet the law's demands, nonetheless chooses to operate a motor vehicle owned by another, he does so at his peril. Clearly, those persons unfortunate enough to be damaged or injured as the result of his decision could find neither compensation nor consolation in the fact that mistakenly, but in "good faith," he had relied upon another to fulfill his own mandatory obligation.

Though certainly not a determinative factor, the administrative difficulties inherent in a contrary rule are not unworthy of consideration. It would burden the Department with the need to conduct numerous plenary hearings and to determine on a case by case basis whether or not a given driver's reliance upon another was reasonable and justifiable. Here, allegedly, both a certificate of insurance and the policy itself were produced for

---

obligee under a form of insurance or bond which complies with the requirements of this division and which covers the driver for the vehicle involved in the accident. [¶] (c) The United States of America, this state, any municipality or subdivision thereof, or the lawful agent thereof. [¶] (d) A depositor in compliance with subdivision (a) of Section 16054.2. [¶] (e) In compliance with the requirements authorized by the department by any other manner which effectuates the purposes of this chapter."

Dowell's inspection. Would display of the certificate alone be enough? Would it be sufficient merely to be shown a vehicle registration card with the name of the insurance company or the surety company and the policy number or surety bond number written thereon? (§ 16028, subd. (b)(3).) What of simple reliance upon the word of an eminently trustworthy friend?

In addition, in most instances the Department would not be in a position to produce evidence that directly refuted a driver's claims. Even when it attempted to do so, a full-scale hearing involving discovery, the production of witnesses, etc., would be required. Consequently, enforcement of the financial responsibility law against uninsured drivers would degenerate into a credibility contest, with results often dependent upon a particular hearing officer's experience or credulity. We do not believe such time-consuming, expensive, and necessarily vexed proceedings were ever contemplated.

Of course, accepting as we must the facts to which the Department has here stipulated, we are not unsympathetic to Dowell's predicament.[3] Too, on the basis of our necessarily limited knowledge of the field, it does appear regrettable that our legislative brethren have not made proof of financial responsibility a prerequisite to obtaining and retaining a driver's license, or a vehicle's registration, rather than adopting a strict liability law which often has pragmatic effect only after one uninsured accident already has occurred. Nonetheless, ever mindful of both our limited wisdom and our jurisdiction, we restrict our consideration to the interpretation and enforcement of the statutes they have enacted.

The judgment is reversed. The parties to bear their own appellate costs.

Compton, Acting P. J., and Fukuto, J., concurred.

---

[3]The instant terse record fails to reveal whether or not the Department also proceeded against the owner of the subject vehicle. It certainly seems it should have done so for, on the basis of the stipulated facts that individual was the more culpable party since he knew, or should have known, that his insurance had been cancelled. That is, if his carrier had failed to give him the required notices, its coverage would still have existed protecting him, Dowell and the public at large. (Ins. Code, §§ 662, 663; *National Auto & Casualty Ins. Co.* v. *California Casualty Ins. Co.* (1983) 139 Cal.App.3d 336, 340 [188 Cal.Rptr. 670]; *State Farm Mut. Auto Ins. Co.* v. *Brown* (1974) 40 Cal.App.3d 385, 398 [115 Cal.Rptr. 213].)