**Jenifer J. STONUM, Plaintiff,**

v.

**U.S. AIRWAYS, INC., Defendant.**

No. C–3–98–75.

United States District Court,
S.D. Ohio,
Western Division.

June 1, 1999.

Jeffrey Michael Silverstein, William H. Prophater, Jr., Jeffrey M. Silverstein & Associates, Dayton, OH, for Plaintiff.

Donald James Mooney, Jr., Shelley Baber Jones, Benesch, Friedlander, Coplan & Aronoff, Cincinnati, OH, Clifford Fonstein, Teresa Kwong, O'Melveny & Myers LLP, Washington, DC, for Defendant.

DECISION AND ENTRY CONDITION-ALLY SUSTAINING DEFEN-DANT'S MOTION FOR SUMMARY JUDGMENT (DOC. # 20); FUR-THER PROCEDURES ORDERED OF THE DEFENDANT; THIS DE-CISION AND ENTRY IS NOT A FINAL, APPEALABLE ORDER.

WALTER HERBERT RICE, Chief Judge.

This litigation stems from the Plaintiff's two-count Complaint (Doc. # 1), in which she asserts a claim under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq. ("FMLA"), and a state-law claim for invasion of privacy. The Plaintiff filed her Complaint after the Defendant fired her for allegedly abusing FMLA leave that she had been granted to care for her elderly mother. Pending before the Court is the Defendant's Motion for Summary Judgment (Doc. # 20).

I. *Factual Background*[1]

Jenifer Stonum worked as a ticket-reservations agent for U.S. Airways in 1996,

---

1. For purposes of ruling on the Defendant's    Motion for Summary Judgment, the Court

when she requested leave under the FMLA to care for her mother, Mary Boston. The Defendant approved her application, and Stonum began leaving work at one o'clock, taking three hours of FMLA leave per day, as she had requested. (Employer Response, Exh. 29, Defendant's Appendix at A–2). Stonum subsequently sought a reduction to part-time status in order to spend even more time assisting her mother. (Stonum depo. at 288). Although no part-time positions were available, U.S. Airways permitted her to extend her FMLA leave indefinitely.[2] (*Id.* at 290–291).

In October, 1996, however, a co-worker advised Lisa Riesenbeck, a U.S. Airways supervisor, that Stonum had admitted using her FMLA leave for purposes other than assisting her mother. (Riesenbeck affidavit at ¶ 4). Near that time, Stonum also utilized the FMLA to take full days off of work, without providing any explanation why she needed the extra time. (Morgan declaration at ¶ 5). In light of the co-worker's complaint and Stonum's FMLA absence for entire days, U.S. Airways hired a private investigator, Peter Thielen, to observe her activities. (Morgan depo. at 28–29; Morgan declaration at ¶ 5). Thielen conducted surveillance on November 4, 1996, November 20, 1996, January 6, 1997, and January 7, 1997, while Stonum was using FMLA leave. (Thielen affidavit at 1; Morgan depo. at 37). On November 4, Stonum used one and one-half hours of FMLA leave but, according to Thielen, she spent only twenty five minutes at her mother's home. (Thielen affidavit at 1–2; Employee Attendance Record at 2, Defendant's Appendix at A–8). After Stonum left her mother's house that day, Thielen called the Boston residence and spoke with Stonum's

mother, confirming that Boston did not leave with Stonum. (Thielen depo. at 57–59; Thielen affidavit at 2). Thielen engaged in similar surveillance on November 20, 1996, when Stonum spent approximately twenty-two minutes at her mother's home, despite using one and one-half hours of FMLA leave. (Thielen affidavit at 2–3; Employee Attendance Record at 2).

Thereafter, Stonum attempted to schedule time off of work from December 25, 1996, through January 5, 1997, by trading hours with other employees and using vacation time. (Stonum depo. at 378–379). After failing to get December 31, 1996, off, Stonum used FMLA leave that day. (Stonum depo. at 306, 378–379). She also used FMLA leave for a full day on January 6, 1997, which should have been her first day back to work. U.S. Airways found this use of FMLA leave suspicious and asked Thielen to observe her activities on January 6, 1997. (Morgan declaration at ¶ 6).

Thielen and his associate, Matthew Sauer, conducted surveillance that day in separate cars. (Thielen affidavit at 3–7; Sauer depo. at 5). Shortly after 9:00 a.m., Thielen called Stonum's residence, pretending to have dialed a wrong number, and he spoke with what sounded like a middle-aged woman. (Thielen depo. at 33). He then called Boston's residence, again pretending to have dialed a wrong number, and he spoke with a woman whom he believed to be Stonum's mother. (*Id.* at 34–36, 38, 60–62). Thielen recognized the woman's voice as the same one that he had heard during the prior, November 4, 1996, telephone call. (*Id.* at 60–62). Based upon these telephone calls, Thielen believed that Stonum and Boston were at their respective homes.

will construe the facts, and all reasonable inferences drawn therefrom, in a light most favorable to the Plaintiff, who is the non-moving party. In its substantive analysis, *infra,* the Court will recite additional pertinent facts, again construing those facts and all reasonable inferences most strongly in favor of the Plaintiff.

2. Thereafter, Stonum voluntarily reduced her FMLA leave to one or one and one-half hours per day, and she began leaving work around three o'clock rather than at one o'clock. (Stonum depo. at 273–275).

Thielen and Sauer then observed Stonum driving various places throughout the day. At approximately 1:55 p.m., Stonum left her house and traveled to Boston's residence, where she spent twelve minutes before returning to her own home. (Thielen affidavit at 4–6). Other than Stonum's twelve-minute visit, neither Thielen nor Sauer observed anyone else at the Boston residence that day. (Thielen affidavit at 3–7).

Stonum then called U.S. Airways on January 6, 1997, and reported that she intended to take eight hours of FMLA leave the next day. (Stonum depo. at 339; Morgan declaration at ¶ 7). As a result, Thielen conducted surveillance on January 7, 1997, from noon until 4:45 p.m., periodically driving past Boston's house and observing the house from a distance. (Thielen affidavit at 7–9). Thielen called the Boston residence and spoke with a woman whom he believed to be Stonum's mother. (*Id.* at 7). Later that day, he observed Boston, alone, unloading groceries from the trunk of her car.[3] (*Id.* at 8–9). Thielen did not see Stonum or her car at Boston's house at any time on January 7, 1997.[4] (*Id.* at 7–9).

The investigator subsequently provided U.S. Airways with a surveillance videotape, still photographs, and a report concerning his investigation. (Morgan declaration at ¶ 9; Thielen depo. at 16). After reviewing this information, U.S. Airways supervisors spoke with Stonum when she returned to work on January 10, 1997. (Vore Memorandum, Exh. 36, Defendant's Appendix at A–2). Although Stonum denied abusing her FMLA leave, U.S. Airways suspended her indefinitely, pending the completion of its investigation. (*Id.*). Several days later, U.S. Airways representatives met with Stonum again and provided her with an opportunity to explain her actions. (Vore Memorandum, Exh. 35, Defendant's Appendix at A–2). After Stonum again denied any abuse of her leave, U.S. Airways terminated her employment. (Morgan depo. at 38). Stonum then unsuccessfully challenged her discharge through a grievance procedure. (Stonum depo. at 426).

## II. *Summary Judgment Standard*

The Court first will set forth the parties' relative burdens once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial[,]" quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 [6th Cir.1987] ). The burden then shifts to the non-moving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v.*

---

**3.** Thielen later confirmed that the woman unloading the groceries had been Boston. He did so by traveling to Boston's house with an associate to deliver flowers. Upon receiving the flowers, Stonum's mother identified herself as Mary Boston. (Thielen depo. at 25, 56–57).

**4.** Stonum also took full days of FMLA leave on January 8–9, 1997, but U.S. Airways did not request any surveillance on those occasions. (Morgan declaration at ¶ 8).

*Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law under Fed.R.Civ.P. 50. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Michigan Protection and Advocacy Service, Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff"). Rather, Rule 56(e) "requires the non-moving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved

in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2726.

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). *See also, L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment...."), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, upon only those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

### III. *Violation of the FMLA (Count I)*

In Count I of her Complaint, Stonum contends that U.S. Airways violated the FMLA by refusing to grant her a requested leave of absence. (Doc. #1 at 15).

Stonum bases her claim upon U.S. Airways' decision to terminate her while she was *using* FMLA leave, purportedly to care for her elderly mother. Consequently, U.S. Airways has construed Count I as presenting a claim for intentional interference with Stonum's continued exercise of her FMLA rights, and she has not challenged that assertion.[5]

■ As a means of analyzing her FMLA claim, Stonum has not challenged U.S. Airways' utilization of the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Absent direct evidence of discrimination, which Stonum fails to present, other federal courts have applied the familiar indirect-evidence *McDonnell Douglas* test to FMLA claims. *See Petsche v. Home Federal Sav. Bank, Northern Ohio*, 952 F.Supp. 536 (N.D.Ohio 1997); *Stubl v. T.A. Systems, Inc.*, 984 F.Supp. 1075 (E.D.Mich.1997); *Hodgens v. General Dynamics Corp.*, 144 F.3d 151 (1st Cir.1998); *King v. Preferred Technical Group*, 166 F.3d 887 (7th Cir.1999); *Morgan v. Hilti, Inc.*, 108 F.3d 1319 (10th Cir.1997).

Under the *McDonnell Douglas* approach, Stonum first must establish a *prima facie* case of discrimination. Then, U.S. Airways must present evidence of a legitimate non-discriminatory reason for its decision to fire her. Finally, Stonum must present evidence from which a trier of fact could find that the Defendants' proffered reason is a pretext for intentional discrimination. *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 801 (6th Cir.1994); *Hodgens*, 144 F.3d at 160.

■ In the present case, U.S. Airways denies, in conclusory fashion, Stonum's ability to establish a *prima facie* case. (Doc. # 20 at 11). Nevertheless, given the Defendant's failure to present *any* argument supporting this claim, the Court will presume that Stonum *can* establish a *prima facie* case under the FMLA. The crux of the parties' dispute, however, concerns the remaining two prongs of the three-part *McDonnell Douglas* test. In support of its Motion for Summary Judgment, the Defendant insists that it possessed a legitimate, non-discriminatory reason for terminating Stonum's employment, namely its belief that she was abusing her FMLA leave. (*Id.* at 12). In response, the Plaintiff alleges that U.S. Airways' proffered reason did not actually motivate its decision to fire her. (Doc. # 22 at 6).

After reviewing the record, the Court agrees that the Defendant has articulated a legitimate, non-discriminatory reason for its decision to terminate Stonum. In November, 1996, the Defendant hired Thielen to observe Stonum's activities based upon: (1) an allegation that she had been using FMLA leave for non-FMLA purposes; and (2) her increased use of FMLA leave, including full work days, purportedly to care for her mother. (Morgan declaration at ¶ 5). After conducting surveillance of Stonum for several days, the investigator informed U.S. Airways representatives that she had spent only minutes a day at her mother's residence, even on days when she took eight hours of FMLA leave.[6] The investigator documented his findings with a written report, a videotape, and still photographs, all of which he forwarded to U.S. Airways representatives. (Morgan declaration at ¶ 9; Thielen depo. at 16).

---

**5.** The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise" of rights protected by the statute. 29 U.S.C. § 2615(a)(1). In paragraph sixteen of her Complaint, Stonum expressly alleges that the Defendant violated § 2615.

**6.** On January 7, 1997, Stonum took eight hours of FMLA leave, but the investigator did not see her at her mother's house *at all* that

day. (Thielen affidavit at ¶ 7–9). Furthermore, the investigator had reason to believe that Stonum's mother, Mary Boston, was at her own residence that day. He called the home early in the day and spoke with a woman whom he presumed to be Mary Boston. (*Id.*). That afternoon, he observed Boston, alone, unloading groceries from the trunk of her car. (*Id.*).

Based upon the investigator's information, U.S. Airways suspected that Stonum had abused her FMLA leave in violation of company policy. (Morgan depo. at 38). Consequently, after affording Stonum an opportunity to explain her conduct, the Defendant terminated her employment for abusing FMLA leave, as detailed in the investigator's report. (Morgan depo. at 38). This Court agrees with U.S. Airways' assertion that abuse of FMLA leave constitutes a legitimate, non-discriminatory reason for Stonum's termination. As a result, the Defendant has rebutted the presumption of unlawful discrimination that arose upon the establishment of the Plaintiff's *prima facie* case. *See Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1082–1083.

Under the three-part *McDonnell Douglas* analysis, the burden now shifts to Stonum to show "that the employer's proffered reason for discharge was actually a pretext intended to hide unlawful discrimination." *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir.1998). In her Memorandum opposing summary judgment, Stonum suggests that "there is sufficient evidence to create a genuine issue of material fact that U.S. Airways['] 'proffered reasons did not actually motivate the decision' to terminate Plaintiff." (Doc. # 22 at 6).[7] After carefully reviewing Stonum's Memorandum, the Court discerns several interrelated arguments which are advanced to support her contention. *First,* Stonum insists that U.S. Airways should have requested additional information from her, rather than conducting surveillance, if it suspected that she was abusing her FMLA leave. (*Id.* at 2–3). *Second,* she insists that U.S. Airways did not possess any "particularized facts" to support its suspicion of FMLA abuse. (*Id.* at 2–4). *Third,* she suggests that U.S. Airways substituted its own judgment for that of Mary Boston's physician concerning Boston's need for assistance. (*Id.* at 2–5). *Fourth,*

Stonum contends that the investigator's report was inaccurate. (*Id.* at 5–6). After considering each of the foregoing arguments, the Court finds no genuine issue of material fact to preclude the entry of summary judgment in favor of the Defendant.

Contrary to Stonum's assertion, U.S. Airways bore no obligation to "seek clarification" from her before hiring an investigator or terminating her employment. In support of this claim, she appears to rely upon the following language from 29 C.F.R. § 825.301(b)(1):

> The employer shall also provide the employee with written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet those obligations.... Such specific notice must include, as appropriate: ... (ii) any requirements for the employee to furnish medical certification of a serious health condition and the consequences of failing to do so....

Stonum also stresses that an employer's failure to provide appropriate notice precludes the employer from taking action against an employee for failing to comply with any requirement that was omitted from the notice. (Doc. # 22 at 2, citing 29 C.F.R. § 825.301(f)).

As the Defendant properly notes, however, 29 C.F.R. § 825.301 merely sets forth an employer's duty to explain an employee's rights and obligations under the FMLA. In the present case, U.S. Airways complied with this provision by providing her with the "prototype" notice contained in Appendix D to Part 825 of the Code of Federal Regulations. (Defendant's Appendix at A–2, Exh. 29). Furthermore, the specific language cited by Stonum requires an employer to tell an employee about "any requirements for the employee to furnish medical certification of a serious health condition...." (Doc. # 22

---

7. An employee can show pretext by offering evidence "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [the] discharge, or (3) that they were insufficient to motivate discharge." *Manzer,* 29 F.3d at 1084.

at 2). In the present case, however, it is undisputed that Stonum returned medical certification forms to U.S. Airways, and the company approved her FMLA leave based upon the information that those forms contained. In addition, U.S. Airways specifically informed Stonum that violation of its leave policies would constitute grounds for termination. (Stonum depo. at 128–129, Defendant's Supplemental Appendix at A–1). Consequently, the Court finds Stonum's reliance upon 29 C.F.R. § 825.301 misplaced.

Nothing in 29 C.F.R. § 825.301 obligates an employer to "seek clarification" when it suspects that an employee is abusing leave granted under the FMLA, and Sixth Circuit case law imposes no such requirement. To the contrary, in *Smith*, 155 F.3d at 799, the Sixth Circuit recently rejected Stonum's argument in the context of a discrimination claim arising under the ADA. There an employer had fired the plaintiff for lying on his application about not suffering from fatigue or narcolepsy. In his subsequent ADA lawsuit, the plaintiff argued that if the employer had consulted medical literature or discussed its suspicions with him, it would have learned that he did not have narcolepsy or suffer from unusual fatigue. *Id.* at 806.

Upon review of the District Court's ruling, which had sustained the employer's motion for summary judgment, the Sixth Circuit rejected the plaintiff's argument. In relevant part, the court stated: "In deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and

considered decision before taking an adverse employment action." *Id.* at 807. The court then concluded that the employer had made an informed and considered decision, reasonably relying upon a number of particularized facts, notwithstanding its failure to "probe further" by speaking with the plaintiff. *Id.* at 806, 808.

In light of *Smith*, the Court concludes that U.S. Airways bore no obligation to speak with Stonum before firing her. Nevertheless, the Court also notes that the Defendant *did* afford Stonum an opportunity to explain her actions before terminating her employment. Stonum met with U.S. Airways at least twice prior to her termination and denied any abuse of her FMLA leave. Thereafter, she unsuccessfully appealed her discharge through the company's grievance process. (Stonum depo. at 426). Although U.S. Airways persistently found Stonum's explanations unconvincing, the company undeniably provided her with numerous opportunities, both pre- and post-discharge, to "clarify" her position.[8]

Stonum next argues that U.S. Airways' suspicion of FMLA abuse was unreasonable because the company lacked any "particularized facts" to support its "suspicion or the surveillance." As the Defendant properly notes, however, the Defendant must articulate "particularized facts" to support its *termination* decision, not its decision to conduct surveillance. *Smith*, 155 F.3d at 806–807; *Kariotis v. Navistar Intern. Transp. Corp.*, 131 F.3d 672, 674 (7th Cir.1997) (finding immaterial an employer's reason for suspecting an abuse of disability leave and investigating an employee).

Furthermore, in the present case, the Defendant has articulated several "particu-

8. In her Memorandum opposing summary judgment, Stonum suggests that if the Defendant had sought "clarification," it would have discovered that she took eight hours of FMLA leave on January 6, 1997, and January 7, 1997, because her sister was out of town and, therefore, could not help care for their mother. (Doc. # 22 at 1). The presence or ab-

sence of Stonum's sister, however, has no impact on the reasonableness of the Defendant's belief that she spent twelve minutes with Mary Boston on January 6, 1997, and no time at all on January 7, 1997, a belief that played a significant role in its determination to discharge her.

larized facts" supporting its decision to investigate Stonum. *First,* Lisa Riesenbeck, who was Stonum's supervisor, received a complaint from a co-worker in October, 1996, about Stonum abusing her FMLA leave. (Riesenbeck declaration at ¶ 3–4). Riesenbeck relayed this information to Lee Morgan, who worked as a U.S. Airways manager. Morgan decided to hire an investigator based upon this complaint. (Morgan depo. at 28–29; Morgan declaration at ¶ 5). *Second,* Stonum significantly increased her use of FMLA leave prior to the investigator's surveillance. Rather than taking one to three hours of leave, Stonum began taking entire days off of work. Stonum took entire days off of work five times in October, 1996, without providing any explanation for the increased use of FMLA leave. (Morgan declaration at ¶ 5; Employee Attendance Record, Defendant's Appendix at A–8). *Third,* Stonum took eight hours of FMLA leave on New Year's Eve, only after unsuccessfully attempting to use vacation time or to find another employee to work her shift. (Morgan declaration at ¶ 6; Stonum depo. at 306–307, 378–379; Employee Attendance Record, Defendant's Appendix at A–8).[9]

The record also contains several "particularized facts" supporting the Defendant's decision to fire Stonum for abusing her FMLA leave. *First,* the co-worker's complaint about Stonum, her increased use of FMLA leave, and the suspicious timing of her leave are all relevant facts supporting the Defendant's conclusion that Stonum had misused her FMLA leave. *Second,* according to the investigator's report, in November, 1996, Stonum twice spent no more than twenty-five minutes caring for her mother while on FMLA leave. (Thielen affidavit at 1–3). *Third,* the investigator reported that Stonum spent twelve minutes at her mother's house on January 6, 1997, while on eight hours of FMLA leave. (*Id.* at 4–6). According to Thielen, he had telephone conversations with Stonum and Boston that day at their respective residences, thereby precluding the possibility that the two women spent the day together. (*Id.* at 3–4). *Fourth,* the investigator informed U.S. Airways that he did not see Stonum visit her mother *at all* on January 7, 1997, despite her taking eight hours of FMLA leave. (*Id.* at 7–9).[10] In light of the foregoing information, U.S. Airways' conclusion that Stonum had abused her FMLA leave was both reasonable and based upon particularized facts. Notably, Stonum has produced *no* evidence suggesting that U.S. Airways' decision to terminate her was not based upon this information. Consequently, she has not demonstrated the existence of a genuine issue of material fact that would preclude the entry of summary judgment in favor of the Defendant.

Stonum next contends that U.S. Airways improperly substituted its judgment for that of Mary Boston's physician concerning Boston's need for assistance. (Doc. # 22 at 2–5). In support of this argument, she stresses that Boston's physician properly certified her mother's need for assistance. (*Id.* at 2). Upon review, however, the Court finds Stonum's argument misdirected. The Defendant terminated Stonum based upon its reasonable, good faith

---

9. Because Stonum's use of FMLA leave on New Year's Eve occurred *after* the Defendant's November, 1996, decision to investigate her, that conduct does not support the initial investigation decision. Stonum's use of FMLA leave of New Year's Eve, however, does support U.S. Airways' subsequent decision to conduct surveillance in January, 1997.

10. In support of its termination decision, the Defendant also cites Stonum's failure to explain, during her grievance hearing, how her mother could have answered the telephone at the Boston residence on January 6, 1997, when Stonum claimed that her mother had spent that day at Stonum's residence. (Doc. # 23 at 11). Given that the hearing occurred *after* U.S. Airways had fired Stonum, however, this argument does not support its termination decision.

belief that she was not *providing* the necessary assistance for her mother while on FMLA leave. The Defendant did not fire Stonum based upon its independent assessment that Boston needed no such assistance.[11]

*Finally,* Stonum alleges pretext based upon what she perceives as certain deficiencies in the investigator's qualifications and his report.[12] (Doc. # 22 at 5–6). The critical issue, however, is not whether the investigator's report was accurate, or even whether Stonum actually abused her FMLA leave. Rather, the key issue is whether the Defendant terminated Stonum based upon a good faith, reasonable belief that she had abused that leave. *Smith,* 155 F.3d at 807–808; *Pesterfield v. TVA,* 941 F.2d 437, 443 (6th Cir.1991) ("The question is not whether TVA's decision that plaintiff was not employable was correct measured by 'objective' standards. What is relevant is that TVA, in fact, acted on its good faith belief about plaintiff's condition based on Dr. Paine's opinion, and, as the district court pointed out, there is no proof to the contrary.").

In *Kariotis v. Navistar International Transp. Corp.,* 131 F.3d 672 (7th Cir.1997), the court recently rejected a claim similar to Stonum's, stating:

> Kariotis' final claim lies under the Family and Medical Leave Act of 1993. In a nutshell, she claims that Navistar violated the return-to-work provisions of the Act when it refused to reinstate her.

Kariotis is correct to say that under the FMLA an employee on leave from work "for the intended purpose of the leave" must be restored to her position (or an equivalent position) once the leave expires. *See* 29 U.S.C. § 2614(a)(1). The problem for Kariotis is that Navistar has demonstrated that it honestly believed she was not on a legitimate FMLA leave; or, tracking the language in the statute, Navistar suspected Kariotis was not using her leave for its "intended purpose" of recovering from knee surgery.

... Navistar need not conclusively prove that Kariotis had misused her leave; an honest suspicion will do. This is because the FMLA's regulations plainly state that an employee like Kariotis has "no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period." 29 C.F.R. § 825.216(a). In other words, because Navistar lawfully could have terminated Kariotis after suspecting she committed fraud while on duty, the company can discharge her after suspecting she committed fraud while on leave. If Navistar had to prove more than an honest suspicion simply because Kariotis was on leave, she would be better off (and enjoy "greater rights") than similarly situated employees (suspected of fraud) who are not on leave. The statute and the regulations rule out that inequity.

---

11. In connection with this argument, Stonum also suggests that she was caring for her mother on January 6, 1997, when she traveled to Memorial Hall in Dayton, Ohio, to purchase theater tickets for her mother. (Doc. # 22 at 5). Even if this excursion qualifies as providing "care" under the FMLA, the trip consumed only thirty-seven minutes out of her day. (Thielen affidavit at 5). Other than those thirty-seven minutes, the investigator reported observing her spend only twelve minutes with her mother, despite the fact that she took eight hours of leave, purportedly to help her mother perform "regular daily activities." (Certifications of Health Care Provider, Defendant's Appendix at A–2).

12. Among other things, Stonum alleges that the report inaccurately identified her as the passenger in a blue pick-up truck, and that the investigator failed to observe the vehicle's license plate number. (Doc. # 22 at 6). Even if they exist, however, such inaccuracies and shortcomings are of little significance. The critical issue is whether the Defendant maintained a good-faith, reasonable belief that Stonum had abused her FMLA leave, and not whether the investigator did a flawless job. *Smith,* 155 F.3d at 807–808.

*Id.* at 680–681.[13]

Likewise, in *Mosley v. Hedges,* 1998 WL 182479 (N.D.Ill. April 14, 1998), the District Court followed *Kariotis* and entered summary judgment in favor of the defendants, who had been accused of violating the FMLA by terminating the plaintiff while she was on FMLA leave. In so doing, the *Mosley* court reasoned:

> ... [I]n this case, the defendants hired a private investigator to observe the plaintiff walking and driving. Based upon the investigator's report, [the defendants] concluded that plaintiff's extension of the [FMLA] leave period was a "fraudulent use of sick leave benefits." Plaintiff has not set forth any evidence, nor made any arguments, that questions the truthfulness of [the defendants'] belief that the plaintiff had misused her FMLA [leave]. Accordingly, we are bound by the *Kariotis* decision and find that the defendants did not violate the FMLA in relying on the "fraudulent use of sick leave benefits" as a basis for terminating the plaintiff.

*Id.* at *6.

As set forth in this Court's analysis, *supra,* U.S. Airways has demonstrated that it reasonably relied upon a number of particularized facts to conclude that Stonum misused her FMLA leave in violation of company policy. Consequently, as the Sixth Circuit recognized in *Smith* and *Pesterfield,* the ultimate accuracy of the Defendant's information is of little importance.[14] Therefore, Stonum cannot demonstrate pretext based upon perceived errors or shortcomings in Thielen's performance.

In light of the foregoing analysis, the Court finds U.S. Airways entitled to summary judgment on Count I of Stonum's Complaint. Construing the evidence and all reasonable inferences in a light most favorable to the Plaintiff, the Court finds no genuine issue of material fact precluding the entry of summary judgment on her FMLA claim. No reasonable trier of fact could conclude that U.S. Airways violated Stonum's rights under the FMLA when it terminated her for misusing FMLA leave in violation of company policy.

## IV. *Invasion of Privacy (Count II)*

In Count II of her Complaint, Stonum asserts a state-law claim for invasion of privacy. (Doc. # 1 at ¶ 17–19). Although Stonum's Complaint does not reveal the specific theory underlying her claim, U.S. Airways insists that she cannot prevail under any of Ohio's recognized invasion-of-privacy theories. (Defendant's Motion for Summary Judgment, Doc. # 20 at 15). In response, Stonum's Memorandum opposing summary judgment fails even to mention her invasion-of-privacy claim.

In any event, after reviewing the record, the Court finds persuasive U.S. Airways' argument that it is entitled to summary judgment on Count II of Stonum's Complaint. "Ohio courts recognize the tort of invasion of privacy to encompass four distinct types of wrongful acts: (1) intrusion into the plaintiff's seclusion, solitude, or private affairs; (2) public disclosure of private facts about the plaintiff

---

13. The Sixth Circuit modified *Kariotis'* "honest belief" standard in *Smith,* 155 F.3d at 799, adding a requirement that an employer's "honest belief" must be "reasonably based on particularized facts...." *Smith,* 155 F.3d at 806. In its analysis, *supra,* the Court has identified a number of "particularized facts" supporting the Defendant's belief that Stonum abused her FMLA leave.

14. In *Smith,* the Sixth Circuit recognized the possibility that if an employer makes an error in judgment that is too obvious to be unintentional, then " 'perhaps it had an unlawful motive for doing so.' " *Smith,* 155 F.3d at 807, quoting *Fischbach v. District of Columbia Dept. of Corrections,* 86 F.3d 1180, 1183 (D.C.Cir.1996). In the present case, however, the Defendant's determination that Stonum abused her FMLA leave is amply supported by evidence in the record. In short, nothing before the Court suggests that the Defendant failed to make a "reasonably informed and considered decision before taking an adverse employment action." *Id.* at 807.

with which the public has no legitimate concern; (3) publicity that places the plaintiff in a false light; and (4) appropriation of the plaintiff's name or likeness for the defendant's advantage." *Gosche v. Calvert High School,* 997 F.Supp. 867, 873 (N.D.Ohio 1998), *aff'd,* 181 F.3d 101, 1999 WL 238649 (6th Cir. April 13, 1999).[15] Given Stonum's failure to identify which of the foregoing theories she intends to pursue, the Court cannot discern the nature of her claim with certainty. Nevertheless, after reviewing her deposition testimony and answers to interrogatories, the Court concludes that she appears to rely upon two privacy theories: (1) that U.S. Airways made public disclosure of private facts; and (2) that it intruded into her private affairs.

Specifically, Stonum alleges that U.S. Airways invaded her privacy by giving her telephone number to investigator Peter Thielen, who called her four times over two months. (Stonum depo. at 434–437). She also alleges an invasion of privacy, based upon the Defendant's disclosure of her license plate number to the investigator, and the investigator's photographing of her mother following Stonum's termination. (Plaintiff's Responses to Defendant's First Set of Interrogatories at 11).

■■ To prevail on her public disclosure of a private fact claim, Stonum must establish, *inter alia,* that private information was communicated "to the public at large, or to so many persons that the

matter must be regarded as substantially certain to become one of public knowledge...." *Seta v. Reading Rock, Inc.,* 100 Ohio App.3d 731, 654 N.E.2d 1061, 1068 (1995); *Killilea v. Sears, Roebuck & Co.,* 27 Ohio App.3d 163, 499 N.E.2d 1291 (1985). In the present case, U.S. Airways' disclosure of Stonum's license plate number and telephone number to *one* person, the investigator, does not constitute an invasion of privacy as a matter of law. *Seta,* 654 N.E.2d at 1068.[16]

■ To prevail on her second invasion of privacy claim, wrongful intrusion into her private activities, Stonum must demonstrate that U.S. Airways intruded into her "private activities in such a manner as to outrage or to cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Housh v. Peth,* 165 Ohio St. 35, 133 N.E.2d 340, 343 (1956). The intrusion "must be of such a character as would shock the ordinary person to the point of emotional distress." *Haller v. Phillips,* 69 Ohio App.3d 574, 591 N.E.2d 305, 307 (1990). This standard is similar to the one that is applied to intentional infliction of emotional distress claims. *Id.*

■ After reviewing the record, the Court finds U.S. Airways entitled to summary judgment on Stonum's "wrongful intrusion" invasion of privacy claim. As a matter of law, the Court finds that neither the investigator's four innocuous telephone calls over a two-month period, nor his ob-

15. Ohio's court's are split regarding the existence of a cause of action for "false light" invasion of privacy. *Gosche,* 997 F.Supp. at 872. In the present case, however, the Court agrees with the Defendant's assertion that the facts do not support such a claim, even if it is viable under Ohio law.

16. In its Motion for Summary Judgment, the Defendant articulates several other reasons why its disclosure of Stonum's license plate number cannot constitute legally actionable public disclosure of a private fact. *First,* Stonum's license plate number was openly displayed to the public on her vehicle. *Second,* an individual's license plate number may be obtained by calling the Ohio Department of Motor Vehicles and providing the name of the person whose number is requested. *Third,* the Defendants' disclosure of Stonum's license plate and telephone numbers was protected by a qualified privilege that applies whenever disclosure is made in a reasonable manner and for a reasonable purpose. *Fourth,* Stonum cannot establish a second element of her claim, namely that the matter disclosed would be highly offensive and objectionable to a reasonable person of ordinary sensibilities. (Doc. # 20 at 16–18). Having determined that the Defendant is entitled to summary judgment for lack of a "public disclosure," however, the Court need not address these alternative arguments.

servation of Stonum's activities in plain view, would cause outrage, mental suffering, shame, or humiliation in a person of ordinary sensibilities.[17] *Cf. Haller*, 591 N.E.2d at 307 (finding no viable invasion of privacy claim, as a matter of law, based upon a single telephone call in which the defendant used profane language).[18]

 Finally, the Court finds no merit in Stonum's assertion that the Defendant violated her privacy rights by photographing her or her mother. Photographing an individual in plain view of the public eye does not constitute an invasion of privacy, as a matter of law.[19] *Jackson v. Playboy Enterprises, Inc.*, 574 F.Supp. 10, 13 (S.D.Ohio 1983) (Rice, J.).

## V. *Conclusion*

Based upon the analysis set forth above, the Defendant's Motion for Summary Judgment (Doc. # 20) is *conditionally* SUSTAINED.[20] Pursuant to footnote twenty of this Decision and Entry, the Defendant is directed to authenticate, *within ten days,* the evidence upon which the Court has relied in its analysis, *supra.* If such authentication is filed, this Decision will become final and judgment will be entered thereon. The Defendant's failure to authenticate this evidence will result in the Court revisiting its ruling without relying upon the evidence.

This Decision and Entry *is not* a final, appealable order.

---

17. In reaching this conclusion, the Court also notes Stonum's stipulation that she does not intend to introduce any evidence of her medical condition, including any evidence regarding emotional or mental distress. (Defendant's Appendix at Tab A–12).

18. Furthermore, although the Court need not decide the issue, it questions whether Stonum possessed any right to keep her activities private while on FMLA leave. In *Baggs v. Eagle–Picher Industries, Inc.*, 957 F.2d 268 (6th Cir.1992), the court concluded that under certain circumstances an employer may use intrusive and even objectionable tactics to obtain employment related information about employees. *Id.* at 275 (noting that under Michigan law an employer may undertake extensive surveillance of an injured employee's home to determine whether the employee is malingering).

19. Additionally, to the extent that Stonum alleges an invasion of privacy based upon the investigator's photographs of her mother, Stonum lacks standing to assert her claim.

20. Defense counsel Teresa Kwong has filed a declaration purporting to authenticate all of the evidence submitted by the Defendant in support of its Motion for Summary Judgment. (Kwong Declaration, Defendant's Appendix at Exh. A). However, Kwong cannot properly authenticate company records and other memoranda about which she lacks first-hand knowledge. Accordingly, the Defendant is directed to authenticate properly, *within ten days,* the evidence upon which the Court has relied herein to sustain the Defendant's Motion for Summary Judgment. If the Defendant fails to authenticate such evidence, the Court will revisit its Decision without relying upon the improperly authenticated evidence.