[No. E032426. Fourth Dist., Div. Two. June 10, 2003.]

RONALD McDANELD, Plaintiff and Appellant, v.
EASTERN MUNICIPAL WATER DISTRICT BOARD, Defendant and
Respondent.

**COUNSEL**

Zo Taylor-Rees for Plaintiff and Appellant.

Filarsky & Watt and Steve A. Filarsky for Defendant and Respondent.

**OPINION**

**GAUT, J.—**

### 1. *Introduction*

Ronald McDaneld appeals from a judgment denying his petition for a peremptory writ of mandate,[1] by which he sought reinstatement of his employment with the Eastern Municipal Water District. On appeal, his primary argument is the water district retaliated against him for exercising his rights for family and medical leave as provided by California and federal law.[2]

We affirm the judgment on the grounds that the water district could properly terminate McDaneld when it reasonably believed he was misusing his family leave and then was untruthful during the subsequent investigation.

### 2. *Factual and Procedural Background*

We reviewed this matter in a previous appeal (*McDaneld v. Eastern Municipal Water Dist. Bd.* (Jan. 10, 2001, E027393) [nonpub. opn.]). We repeat the salient facts as described there and in the administrative record.

The water district first employed McDaneld as a mechanic in September 1996. In July 1997, he received a positive annual evaluation.

In October 1997, the water district first denied, then approved, McDaneld's request for family leave to care for his child. The water district also placed McDaneld on a performance improvement plan.

In December 1997, the water district reprimanded McDaneld for tardiness. On January 22, 1998, he responded in writing and he also filed a grievance.

The day before, January 21, 1998, McDaneld had submitted a request for family medical leave to care for his father during and after ankle surgery for the period of January 23 to January 30. After surgery, McDaneld's father was released from the hospital on Friday, January 23, and went to McDaneld's house in Temecula, where he stayed until Thursday, January 29. During the week beginning Monday, January 26, while his father was staying with him, McDaneld played golf on Monday afternoon and worked intermittently on his sprinkler system between Wednesday and Friday.

---

[1] Code of Civil Procedure section 1094.6.

[2] Government Code section 12945.2 et seq. and 29 United States Code sections 2601-2619.

On Thursday afternoon, January 29, defendant drove his father back to his place of business in the San Fernando Valley. The father retrieved his car and drove home alone to Pacoima.

The parties disagree on whether McDaneld then stayed overnight in Arcadia on Thursday or whether he drove home to Temecula. McDaneld says he stayed with friends in Arcadia to be close to his father. Investigators state they followed McDaneld home Thursday night. The administrative finding on this point was that McDaneld went home.

Whether or not McDaneld went home Thursday night, he claims that on Friday morning his pregnant wife injured her back. Therefore, he stayed home Friday to help her.

The water district officials interviewed McDaneld in February 1998. The general manager then issued a notice of proposed discharge that became official on March 11, 1998. After McDaneld requested review, a three-person disciplinary review committee conducted a three-day hearing, in which both McDaneld and the water district were represented by legal counsel. The committee issued findings and recommended McDaneld be reprimanded, not terminated, and reinstated to his position. Brudin, the general manager, then reviewed the committee's findings and rejected the recommendation for disciplinary action. Brudin made new findings and approved McDaneld's termination.

McDaneld filed his petition for writ of mandate in June 1999. In May 2000, the trial court granted the petition, commanding the water district to set aside the termination. The water district appealed and, in January 2001, this court reversed and remanded. Upon second hearing, the trial court denied the petition.

## 3. DISCUSSION

For purposes of review, we accept the administrative findings as made by Brudin, the water district's general manager, and upheld by the trial court when it affirmed Brudin's decision to terminate McDaneld. Although McDaneld makes a slight effort to argue there is not substantial evidence to support the findings, what McDaneld really argues is there is another plausible view of the evidence more favorable to his position. But he does not demonstrate the findings are wholly unsupported or that the trial court

abused its discretion in upholding them.[3] Therefore, we accept as established facts Brudin's findings that McDaneld played golf for more than three hours on the Monday afternoon of his family leave, on Wednesday he worked on his lawn sprinklers, and on Friday he did not take care of either his father or his wife, whose illness Brudin regarded as feigned. Furthermore, we accept as fact Brudin's findings that McDaneld was untruthful on a number of points.

█ The question for our de novo review[4] is whether, based on Brudin's findings, the water district violated McDaneld's rights to exercise family leave, an issue which McDaneld raised in his petition when he alleged "he failed to report for work on a day he was off on Family Medical Leave for his father when his need to provide FMLA related care for his father was completed due to his wife's need for assistance under the Family Medical Leave Act on that day." The issue was also briefed below by the parties although the trial court did not address it in its ruling.

Both state and federal law allow family leave for family and medical needs.[5] If the need for leave is foreseeable, under federal law, an employee must give 30 days' advance notice[6] and, under state law, the employee must give reasonable advance notice.[7] █ If the need for leave is not foreseeable, the law requires "such notice as is practicable,"[8] depending on the facts and circumstances of the case.[9] The failure to give proper, timely notice can bar a claim under California or federal law that the right to family leave has been violated.[10]

█ In the present case, it is not disputed that McDaneld gave adequate notice of his need for family leave for his father. Once that need ended, however, should McDaneld have taken Friday off as well, especially since Brudin found that McDaneld did not need family leave to care for his wife? Additionally, did he misuse family leave when he spent part of his leave golfing and working in his yard? Furthermore, did untruthfulness about what he was doing justify his termination?

[3] *Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 44 [112 Cal.Rptr. 805, 520 P.2d 29].

[4] *Dowell v. Department of Motor Vehicles* (1990) 220 Cal.App.3d 1567, 1569 [270 Cal.Rptr. 240].

[5] Government Code section 12945.2 et seq. and 29 United States Code sections 2601-2619.

[6] Title 29 United States Code section 2612(e)(1).

[7] Government Code section 12945.2, subdivision (i).

[8] Title 29 United States Code section 2612(e)(1).

[9] *Manuel v. Westlake Polymers Corp.* (5th Cir. 1995) 66 F.3d 758, 764; *Mora v. Chem-Tronics, Inc.* (S.D.Cal. 1998) 16 F.Supp.2d 1192, 1207-1209, 1216-1218, 1232.

[10] *Gibbs v. American Airlines, Inc.* (1999) 74 Cal.App.4th 1, 6-9 [87 Cal.Rptr.2d 554].

McDaneld argues he did not know he was prohibited from golfing and installing sprinklers while caring for his father and he did not know he should return to work immediately once he had stopped caring for his father. In the alternative, he claims he had to care for his pregnant wife but Brudin found that was not true. McDaneld also argues that golfing and installing sprinklers were not activities inconsistent with providing the necessary physical and psychological care to his father.[11] McDaneld further protests the water district did not properly disseminate information about family leave.[12]

It is true that in some cases, the employer's failure to provide adequate notice about family leave has caused courts to rule the employer could not penalize the employee for using leave incorrectly. For example, in *Sherry v. Protection, Inc.*,[13] Sherry exercised family leave while his father was dying and returned to work two weeks after his father's death. He was fired because he did not return to work the day after his father died. The Illinois federal district court found the employee had been granted five weeks of leave without qualification and the employer had not told him he was required to return to work if his father died before the five weeks concluded. Therefore, the employer had failed to inform the employee of his rights and obligations under family leave and the employer may have violated the employee's family leave rights, making summary judgment inappropriate. Another federal district court case, following *Sherry*, agreed family leave rights were violated when an employer did not notify an employee how soon she had to return to work after her husband's death.[14]

In contrast, in another case involving the undercover surveillance of an employee, the Seventh Circuit Court of Appeals decided that an employer can fire an employee if the employer has an honest suspicion that an employee has misused his or her leave. In that case, the plaintiff was clandestinely videotaped performing various physical activities after knee replacement surgery. The court held the employer's suspicions of fraud, even if wrong, were enough to justify the employee's discharge.[15] In other words, termination does not violate family leave rights whether or not the employee was on leave at the time and whether or not the employer failed properly to advise the employee about family leave rights: " 'The critical

---

[11]*Mora v. Chem-Tronics, Inc., supra,* 16 F.Supp.2d at page 1206.

[12]*Mora v. Chem-Tronics, Inc., supra,* 16 F.Supp.2d at pages 1220-1227; *Barone v. Leukemia Society of America* (D.N.J. 1998) 42 F.Supp.2d 452, 461-463.

[13]*Sherry v. Protection, Inc.* (N.D.Ill. 1997) 981 F.Supp. 1133, 1136.

[14]*Barone v. Leukemia Society of America, supra,* 42 F.Supp.2d at pages 461-463.

[15]*Kariotis v. Navistar Intern. Transp. Corp.* (7th Cir. 1997) 131 F.3d 672, 680-681.

issue is whether the [employer] maintained a good-faith, reasonable belief that [the discharged employee] had abused her FMLA leave . . . .' "[16]

An honest mistake may excuse a trivial misuse of family leave.[17] But even if McDaneld was mistaken about when he should return to work, the water district's justifiable conclusion that he had misused leave in other ways and was untruthful allowed the district to terminate him anyway.[18]

### 4. *Disposition*

We affirm the judgment and order the prevailing party to recover its costs on appeal.

Ramirez, P. J., and Ward, J., concurred.

A petition for a rehearing was denied June 24, 2003, and appellant's petition for review by the Supreme Court was denied September 10, 2003.

---

[16]*Medley v. Polk Co.* (10th Cir. 2001) 260 F.3d 1202, 1208, citing *Stonum v. U.S. Airways, Inc.* (S.D. Ohio 1999) 83 F.Supp.2d 894, 903, footnote 12; *Williamson v. Parker Hannifin Corp.* (N.D.Ala. 2002) 208 F.Supp.2d 1248, 1249.

[17]*Nelson v. United Technologies* (1999) 74 Cal.App.4th 597, 616 [88 Cal.Rptr.2d 239].

[18]*Kariotis v. Navistar Intern. Transp. Corp., supra,* 131 F.3d at pages 680-681; *Moughari v. Publix Supermarket* (11th Cir. 1999) 170 F.3d 188.